Filed 1/22/14  P. v. Matthews CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D062456 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD240211) |
| ANTRIEL A. MATTHEWS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Joan P. Weber, Judge.  Affirmed.

Marianne Harguindeguy Cox, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Stephanie H. Chow, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found Antriel Matthews guilty of committing a robbery (Pen. Code,[1] § 211) and that he committed the crime for the benefit of a criminal street gang (§ 186.22). Matthews admitted he had three prior felony convictions. (§ 1203, subd. (e)(4).) The court imposed a 13-year prison term, consisting of a three-year middle term for the robbery plus a 10-year consecutive term on the gang enhancement. The court also revoked Matthews's probation on three prior felony convictions, and imposed a middle term on each felony to run concurrently with the sentence on the current offense.

On appeal, Matthews contends the court erred by: (1) denying his mistrial motion based on his prosecutorial misconduct claim; and (2) denying his motion to strike the 10-year sentence on the gang enhancement. We reject these contentions and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Fifteen-year-old A was walking home when a Mustang vehicle pulled up next to him. Matthews and his codefendant Jose Castillo were passengers in the vehicle. Matthews asked A whether he "bang[ed]," meaning whether he was in a gang. A ignored Matthews and continued walking.

Matthews and Castillo then got out of the vehicle and confronted A. Castillo said "it was City Heights Juniors," and Matthews "snatched" A's hat from his head. When A grabbed the hat back, Matthews began punching and socking A's face and head with a closed fist. A started running towards his house to "protect" himself, but Matthews and/or Castillo tripped A. Matthews and Castillo then punched A in the head while he

---

[1] Further statutory references are to the Penal Code.

was face down on the ground covering his face. Defendants took off A's shoes and grabbed his hat. At that point, two younger boys ran to A's house to tell A's family of the beating. Matthews and Castillo ran back to their vehicle.

A's older sister (Sister) came out of the house, and after learning the perpetrators had returned to their vehicle, decided to take her mother's van to chase after them. At one point, Sister's vehicle was next to the Mustang and she clearly saw Matthews sitting in the passenger seat of the vehicle.

Sister later identified Matthews from a photo lineup as the person she observed in the front passenger seat of the Mustang. A also identified Matthews and Castillo from photo lineups. A went to the same school as Castillo, and earlier that day A had seen Castillo and Matthews together. This information was corroborated by a school counselor who testified at trial. Officers later located the Mustang in which Matthews and Castillo had been riding, and found the vehicle owner was a well-known City Heights Juniors gang member.

At trial, A testified in detail about the incident, but denied he was fearful or afraid during the beating. A and Sister each identified Matthews as a perpetrator of the crime.

With respect to the gang enhancement allegation, the evidence showed Matthews had eight documented contacts with police officers. One police officer testified that during a police field interview conducted about two years earlier, Matthews had identified himself as a member of the City Heights Juniors gang and said he joined the gang when he was 10 years old. Matthews had City Heights Juniors gang tattoos on his chest and back. Another police officer testified that in 2009, he apprehended Matthews

3

after he had been painting gang-related graffiti. Additionally, when Matthews was arrested, his cell phone contained various photographs of City Heights Juniors gang members, including the owner of the Mustang used when A was attacked.

Based on this and other information, Sergeant Phillip Franchina (who testified as a gang expert) opined that Matthews was "definitely a member of the City Heights Juniors" gang. Detective Franchina also testified that City Heights Juniors was a criminal street gang, and the prosecution presented supporting evidence of two previous crimes committed by this gang.

Responding to a hypothetical question, Detective Franchina opined that based on his training and experience, gang members commit crimes such as beating up a teenager for no apparent reason (other than to steal shoes or a hat) to "instill[ ] fear throughout the neighborhood" and "build[ ] notoriety" for the gang. He explained that these attacks "promote" the gang's status in the neighborhood because it makes people "fear[ful]" and thus brings "respect" for the gang. Based on this information, Detective Franchina opined that this type of crime would be committed for the "benefit" of the gang.

*Defense*

Neither defendant testified. During his closing argument, Matthews's counsel did not challenge the evidence showing Matthews was a City Heights Juniors gang member and that he participated in A's beating. Instead, defense counsel's central theory was that the prosecutor did not prove the elements of a robbery. In support, counsel referred to A's testimony that he was not afraid during the attack, and argued that A's shoes appear to have been taken after the beating and thus they were not taken by force. He additionally

4

discussed the delay in reporting the incident to the police. Matthews's counsel also argued that the incident was not a crime, and instead was a "jump-in," i.e., an attempt to initiate A into the City Heights Juniors gang.

After very brief deliberations, the jury found defendant guilty of the robbery charge and found true the criminal street gang enhancement allegation (§ 186.22).

DISCUSSION

I. *Claimed Prosecutorial Misconduct*

Matthews contends the court erred in denying his motion for a mistrial after a police detective referred to Matthews's prior arrests. He claims the detective's testimony was the result of prosecutorial misconduct.

A. *Background*

Before trial, the prosecutor requested permission to admit certified court records showing Matthews's prior convictions for the purpose of proving various issues, including a " 'pattern of criminal gang activity' " and Matthews's knowledge of the gang's predicate crimes. During a pretrial hearing, the court ruled that the evidence of Matthews's prior convictions for the purpose of proving the gang's predicate acts was inadmissible because the evidence was cumulative on the gang's criminal activities and was unduly prejudicial. But the court stated the prosecutor could elicit evidence that Matthews had prior "contacts" with the police, including that he had previously been caught vandalizing property with gang graffiti. However, the court admonished that the police witnesses should not testify that Matthews was convicted of his tagging/vandalism

5

conduct to show the gang's predicate acts because the fact of the conviction would be unduly prejudicial and cumulative.

During trial, the prosecution called Detective Rudy Castro of the criminal street gang unit to testify about his investigation of the *current* crime. Detective Castro testified that about one or two hours after the attack on A, he received information from Detective Hobbs that Matthews was a suspect in the crime. The following colloquy then occurred:

> "[Prosecutor:] Based on the information you received from Detective Hobbs, what did you do?"
>
> "[Detective Castro:] I went over to Mr. Matthews' residence, which is on Keeler Avenue in Southeastern Division."
>
> "[Prosecutor:] How did you know where his residence was?"
>
> "[Detective Castro:] For having contacts through *field interview reports and arrest reports* of Mr. Matthews, I had known his address for some time."
>
> "[Matthews's counsel:] Can we approach, Your Honor?"
>
> "The Court: Yes."
>
> "[The following proceedings were had between the court and counsel out of the presence and hearing of the jury]"
>
> "[Matthews's counsel:] Make objection to the officer saying he knew of because of arrest reports, which I think have to be prejudicial to us. Ask that they be stricken and that the jury be admonished not to consider them. And that this also violates my client's due process, protection rights in that there's no reason or no admissibility for those remarks."
>
> "The Court: You mean the word arrest?"

6

"[Matthews's counsel:]  The context they were used that he knew of the address and the location because of the arrests.  This is only prejudicial to me."

"The Court:  Okay.  Only because he's using the word arrest."

"[Matthews's counsel:]  Well—"

"The Court:  Obviously, it is relevant to know how he knew where to go."

"[Matthews's counsel:]  He gave other ways or reasons from what officers had told him.  He had other information.  This is only, I think, to dirty my client up."

"The Court:  Again, I thought we told you to instruct the officers not to mention arrest or convictions."

"[Prosecutor:]  I did, Your Honor.  I didn't tell him not to mention arrest.  I told the other ones.  *I [didn't] think it would come in through him.  The arrest portion through this detective.*"

"The Court:  You did or did not?"

"[Prosecutor:]  I did not."

"The Court:  Okay."

"[Matthews's counsel:]  I move for mistrial."

"The Court:  Okay.  Mr. Ojeil, what is your position?"

"[Prosecutor:]  People's position, one, we can do a curative instruction to tell the jury to disregard that.  [¶]  Two, they're going—the jury is going to have lots of information about the fact Mr. Matthews has had lots of police contacts, and they're going to know that he's had a lot of contact through all the field interviews, and Detective Franchina getting documentation reports already has been mentioned in opening by defense counsel."

"The Court:  I want to reiterate.  I said do not mention arrest or convictions. You need to instruct every potential witness that they are not—they can say contacts.  He could say contact.  I know where he lived.  Arrests is one step beyond it.  If he had said conviction, I probably would have granted the

7

mistrial motion. I'm going to tell the jury to disregard the last answer. Ask a leading question about you knew from prior contacts where he lived."

"[Prosecutor:] Absolutely."

"The Court: Thank you. I would instruct the jury to disregard the witness's last answer in its entirety. You may proceed, Mr. Ojeil." (Italics added.)

## B. *Analysis*

"It is misconduct for a prosecutor to violate a court ruling by eliciting or attempting to elicit inadmissible evidence in violation of a court order." (*People v. Crew* (2003) 31 Cal.4th 822, 839.) "If the prosecutor believes a witness may give an inadmissible answer during his examination, he must warn the witness to refrain from making such a statement." (*People v. Warren* (1988) 45 Cal.3d 471, 482.) "Prosecutorial misconduct may constitute an appropriate basis for a mistrial motion." (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1154.) However, a court has broad discretion in ruling on a mistrial motion, and a "trial court should grant a mistrial only when a party's chances of receiving a fair trial have been irreparably damaged . . . ." (*People v. Bolden* (2002) 29 Cal.4th 515, 555; see *People v. Avila* (2006) 38 Cal.4th 491, 573.)

In this case, Matthews has not shown the prosecutor engaged in misconduct. First, the record is unclear whether the court had actually ruled earlier that arrests (as opposed to convictions) were inadmissible at trial. Although the court appeared to indicate it had made this ruling, on our review of the record, there was no mention of arrests during the in limine hearing, and the brief reference to arrests in a sidebar discussion during another witness's testimony did not necessarily serve to change the court's prior rulings.

8

Additionally, even if there had been a prior ruling regarding the arrests, the court had a reasonable basis to conclude the prosecutor's failure to instruct this witness on the issue was not misconduct because the prosecutor could have reasonably believed the fact of prior arrests would not arise during the questioning. Unlike the testimony of the officer who apprehended Matthews during the tagging/vandalism episode (which related directly to an earlier arrest/conviction), Detective Castro was called to testify only about his efforts to locate Matthews after the commission of the current crime. Although the prosecutor asked Detective Castro how he knew the location of Matthews's residence, the prosecutor could have reasonably believed the officer would respond that his address was well known to police officers through field interview reports and prior contacts based on Matthews's gang affiliation—testimony that would have been appropriate and proper.

Further, Detective Castro's brief mention of prior arrest reports was not prejudicial under any review standard. (*Chapman v. California* (1967) 386 U.S. 18, 24; *People v. Watson* (1956) 46 Cal.2d 818, 835-836.) There is no reasonable possibility the jury would have been improperly influenced by the detective's brief reference to arrest reports. The prosecution proffered unchallenged evidence that Matthews had prior contacts with police, Matthews was a long-time member of the City Heights Juniors gang, and City Heights Juniors gang members regularly engage in criminal activities. Additionally, the evidence was overwhelming (and essentially undisputed by Matthews's counsel) that Matthews committed the beating of the 15-year-old victim. The primary disputed issue was whether the prosecution proved beyond a reasonable doubt the elements of robbery (particularly that the hat and shoes were taken through force or fear), and it is highly

unlikely the brief reference to an unspecified prior arrest would have unduly affected the jury's consideration of this issue.

II. *Court's Denial of Motion To Strike Punishment on Gang Enhancement*

Matthews contends the trial court abused its discretion by refusing to strike the punishment for the street gang enhancement finding.  (§ 186.22.)[2]

A. *Applicable Legal Principles*

The jury found Matthews committed the robbery "for the benefit of" or "in association with a criminal street gang with the specific intent to promote, further, and assist in the criminal conduct by gang members . . . ."  (See § 186.22, subd. (b)(1).) When a jury finds true a gang enhancement allegation in connection with a robbery conviction, "the person *shall* be punished by an additional term of 10 years."  (§ 186.22, subd. (b)(1)(C), italics added; see § 667.5, subd. (c)(9).)  However, section 186.22, subdivision (g) provides:  "Notwithstanding any other law, the court may strike the additional punishment for the enhancements provided in this section . . . *in an unusual case where the interests of justice would best be served*, if the court specifies on the record and enters into the minutes the circumstances indicating that the interests of justice would best be served by that disposition."  (Italics added.)

In the analogous context of a court's discretion to grant probation in "unusual cases where the interests of justice would best be served" (§ 1203, subd. (e)), courts hold this

_____

[2]     All references to section 186.22 are to the version of the code section applicable at the time of sentencing (August 2012).

10

discretion "must be narrowly construed and . . . limited to those matters in which the crime is . . . atypical or the offender's moral blameworthiness is reduced." (*People v. Superior Court* (1996) 50 Cal.App.4th 1216, 1229.)

We review the court's refusal to strike a gang enhancement sentence under an abuse of discretion standard. (*People v. Sinclair* (2008) 166 Cal.App.4th 848, 855.) We must affirm a trial court's discretionary sentencing choice unless it is arbitrary, capricious, or irrational. (See *People v. Carmony* (2004) 33 Cal.4th 367, 376-377.) Under this standard, we do not reweigh sentencing factors or substitute our evaluation for that of the sentencing court. (*Id.* at p. 377.) " ' "[T]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review." ' " (*Id.* at pp. 376-377.)

### B. *Background*

At the time of sentencing, Matthews was 21 years old and had an extensive criminal and juvenile history. As a juvenile, Matthews was adjudged a ward in 2005 for possessing a knife while on school grounds, and in 2008 for using marijuana and alcohol, associating with known gang members, and violating his curfew. While at the juvenile detention facility, Matthews repeatedly violated rules by engaging in gang-related conduct. After he turned 18 years old, Matthews was convicted of committing three felonies, including vandalism/graffiti with gang markings, assault with a deadly weapon,

11

and unlawful taking/driving a vehicle. At the time of his arrest, Matthews was on formal probation for all three of these matters.

After summarizing this criminal history and discussing other relevant factors, the probation officer recommended the 10-year gang enhancement sentence be imposed. The probation officer noted that Matthews appeared remorseful for putting his own family "through this" and that Matthews said he was trying to "better" himself by holding several jobs and attending school for automobile mechanics. However, the probation officer also noted that during his probation, Matthews had continued his involvement in the City Heights Juniors gang, "indicat[ing] he led a sort of double life." The probation officer stated: "Despite his exposure to the criminal justice system as a minor and now as an adult, it has not deterred him from participating in gang related activities. [¶] He has failed to take advantage of the opportunities while on probation to change his life's path and direction, and has continued to victimize the community at large. The victim . . . was emotional[ly] traumatized . . . and has attended counseling sessions to address his fear of being retaliated against. Further, he and his family have moved . . . two times since the incident as a result of that same fear."

In his sentencing memorandum, defense counsel requested the court strike the 10-year gang enhancement sentence. Defense counsel noted that Matthews was only 21 years old, had completed high school, and "has accepted employment when available and done reasonably well." Defense counsel also asserted that the property taken from A was "deliberately small" and "the victim was not seriously harmed." Defense counsel also

submitted letters from Matthews's prior supervisor and a case manager, supporting that Matthews was a hard worker and responsible.

At the sentencing hearing, the court initially observed it was inclined to agree with the probation department "[g]iven the appalling record that [Matthews] has amassed in the last few years with the numerous matters where he's on felony probation—and I do view him as the principal in this case and the instigator." Defense counsel responded by repeating the facts in the submitted papers (e.g., regarding Matthews's age and the positive aspects of his background), and also emphasized that the prosecution had been willing to strike the enhancement as part of a pretrial plea bargain (which Matthews declined).

However, the court found these factors to have minimal weight, noting that Matthews had shown little or no remorse or regard for the victim. The court stated: "The way I see the case, [Matthews and Castillo] sought out this victim. . . . It is the most gratuitous violence to this court that Mr. Matthews thought it necessary to beat up this young man over a pair of shoes and a hat. [¶] . . . [¶] . . . [I]t's gotten to [the] point . . . that Mr. Matthews has become so firmly entrenched and committed to this gang that he would commit a crime like that against an innocent high school kid, while knowing he's on probation for three separate felony offenses, that's where I'm at with your client."

At the conclusion of the arguments, the court reiterated: "Twenty-two years I've been doing cases. I've been sitting up here with this black robe on and listening to the plight that gangs create throughout our community, and I'm always just blown away by the lack of regard for other human beings that gang members have. That . . . they would

13

track this young boy down and beat him up, like I said, over a pair of shoes—it's all about the power. It's all about I'm bigger, I'm badder than you are. . . ." The court then denied the motion to strike, noting that it "took an hour to go through all" of Matthews's criminal files "to figure out what sentence was going to be appropriate." The court stated that granting Matthews probation for his prior crimes gave him the wrong message that there would be no consequences for "gratuitous violence," and implored Matthews to make attempts to turn his life around.

## C. *Analysis*

The court did not abuse its discretion in concluding this was not an "unusual case" supporting the striking of the gang enhancement punishment in "the interests of justice." (§ 186.22, subd. (g).)

The court examined numerous relevant factors and found the punishment appropriate to the defendant and the circumstances of the crime. The court said it had read the probation report and defense counsel's sentencing memorandum, which contained facts supporting that Matthews deserved leniency (such as his relatively young age and that he had completed high school, been employed, and complied with probation conditions until the current crime). However, the court also considered the nature of the crime (a random and senseless beating of a teenager who was minding his own business), Matthews's extensive recent criminal history, the fact that Matthews had been granted substantial leniency in the past but continued to engage in criminal behavior, and the fact that Matthews was still an admitted active member of a criminal street gang.

Contrary to Matthews's contention, the court's statement that his only "occupation" was committing criminal acts does not show the court was unaware he had held various part-time or seasonal jobs. The court's statement that Matthews's essential *occupation* was criminal behavior was accurate on the record before us.

The court's explanation of its ruling was sound and well-reasoned. There was more than enough evidence to support the court's conclusion that this was not an "unusual case" warranting the striking of the gang enhancement. The record shows the court was affirmatively aware of its discretion to strike the punishment and found it was not appropriate to do so under the specific circumstances of the case. The court gave the case serious and lengthy consideration. The court balanced the relevant facts and reached an impartial decision consistent with the applicable legal principles. There was no abuse of discretion.

In arguing on appeal that the court abused its discretion, Matthews highlights the facts minimizing the seriousness of the offense and his culpability, and asks us to reach a different conclusion than did the trial court. For example, he notes there were no weapons involved in the incident; the property taken had a minimal monetary value; the victim denied being afraid; Matthews was only 21 at the time of the offense; Matthews had successfully completed high school and held three jobs during the past year; and the prior felony convictions did not actually involve serious violence.

In asserting these arguments, Matthews is essentially asking us to reweigh the evidence. This is not the proper role of an appellate court. This court does not reevaluate the relevant factors or substitute its judgment for that of the trial court. "We will not

15

interfere with the trial court's exercise of discretion 'when it has considered all facts bearing on the offense and the defendant to be sentenced.' " (*People v. Downey* (2000) 82 Cal.App.4th 899, 910.)  Matthews has not demonstrated that the trial court's refusal to strike the gang enhancement sentence was arbitrary or irrational.

DISPOSITION

Judgment affirmed.

HALLER, Acting P. J.

WE CONCUR:

McDONALD, J.

IRION, J.