[No. E018366. Fourth Dist., Div. Two. Nov. 15, 1996.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF INYO COUNTY, Respondent;
DONALD C. DORSEY, Real Party in Interest.

**COUNSEL**

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Holly D. Wilkens and Frederick B. Clark, Deputy Attorneys General, for Petitioner.

No appearance for Respondent.

John L. Staley for Real Party in Interest.

## OPINION

**McKINSTER, J.**—In this matter the People challenge the trial court's decision to place defendant and real party in interest Donald C. Dorsey on probation, although as a result of his convictions he is presumptively ineligible. They also complain of the trial court's failure to impose a restitution fine and to consider costs under a tax statute of which Dorsey was convicted. We have determined that the matter must be remanded for resentencing.

### FACTS OF THE CASE

There is no dispute over the essential facts of the case.[1] Donald C. Dorsey, defendant in the criminal proceedings below (and hereinafter sometimes defendant) was for many years the Sheriff of Inyo County. Following a jury trial, he was convicted of several offenses arising out of the disappearance of a substantial amount of public money which had been entrusted to him. Dorsey was convicted, inter alia, of misappropriating public funds (Pen. Code, § 424, subd. 1),[2] embezzling public funds (§§ 504, 514), and subscribing a false tax return (Rev. & Tax. Code, former § 19405, subd. (a)(1).) The jury made special findings that Dorsey embezzled public moneys, and that he embezzled and misappropriated sums in excess of $100,000.

The major part of the People's case at trial involved money which Dorsey had received as "special funds" designated for undercover or street operations. Evidence presented by the People tended to establish that this money did not reach the officers and projects for whom and which it was intended; evidence presented by defendant suggested that he *did* apply the money as he was expected to do, and that his errors were those of accounting, not malfeasance.

As a result of his conviction for embezzling public funds, Dorsey was presumptively ineligible for probation pursuant to section 1203, subdivision (e)(7). He was *also* presumptively ineligible due to the finding that the total amount taken exceeded $100,000. (§ 1203.045.) At sentencing, however, the trial court granted probation. Its "findings" were as follows: "The Court finds that this is an unusual case, by classic definition, and the interest of

---

[1] See below for Dorsey's challenge to the adequacy of the record.

[2] All subsequent statutory references are to the Penal Code unless otherwise specified.

justice and of the public will be best served by the granting of probation. [¶] The whole fabric of the Defendant's life conflicts with the crimes here involved. Indeed, the story told by the evidence which supports the verdict is an unusual tale in itself. [¶] The Court agrees with and adopts the Defendant's statement in mitigation as to the unusual nature of the case, and that the best interests of justice are served by probation."

As the trial court expressly adopted the statement in mitigation filed by defendant, we will summarize its arguments. 1) Defendant has dedicated his life to law enforcement. 2) He retains substantial community respect. 3) He was not provided with adequate guidelines for the use of "special funds" moneys.

## DISCUSSION

First, we note that the People are entitled to seek review of the order granting probation by section 1238, subdivision (d). Indeed, that is their *only* avenue of review. Appeal is not available. The Legislature intends that such issues be resolved with all possible speed; as pointed out in *People* v. *Bailey* (1996) 45 Cal.App.4th 926, 930 [53 Cal.Rptr.2d 198], in the interests of justice a defendant should not be compelled to wait to discover that his probation was invalidly granted and that he must go to prison until *after* he has duly served at least a substantial amount of the required time on probation.

We next dispose of defendant's argument that the petition should be denied because the People have failed to provide an adequate record.[3] In this case, we have the People's closing argument (which we agree has no value as evidence), defendant's statement in mitigation, the probation report, and the transcript of the sentencing hearing, along with documents of less, if any, value.[4] We have no portion of the trial evidence.[5] As Dorsey notes, a petitioner seeking relief by way of mandamus bears the burden of presenting an adequate record to demonstrate the claimed error. (*Lemelle* v. *Superior Court* (1978) 77 Cal.App.3d 148, 156 [143 Cal.Rptr. 450].) In the usual case, involving pretrial rulings, the record consists at a minimum of the documents submitted for and against a position, a copy of the order, and a transcript of the hearing at which the decision was made. (*Ibid.*; Cal. Rules of Court, rule

---

[3]Dorsey also argues that the petition is improperly verified. We have disposed of this claim by our denial of a motion to dismiss or strike based on the same ground.

[4]We granted Dorsey's motion to strike copies of letters and publications expressing "outrage" over the sentence imposed, as well as a letter from a United States Attorney commenting on the sentencing in an arguably similar case in another jurisdiction. We found these to be improperly submitted.

[5]It appears that trial consumed at least several weeks.

56(c)(1), (2), (4).)[6] However, a petitioner should also submit "copies of all other documents submitted to the trial court that are necessary for a complete understanding of the case and the ruling" (rule 56(c)(3)) and although the trial transcript obviously is not a "document," Dorsey argues that the case cannot be understood without a complete presentation of the evidence.

In some cases in which the People challenge a grant of probation it *would* be necessary to review the entire record, or at least a stipulated summary. For example, in *People* v. *Superior Court* (*Du*) (1992) 5 Cal.App.4th 822, 832 [7 Cal.Rptr.2d 177], the court based its grant of probation on a factual finding that the defendant acted out of duress or great provocation; obviously, this could not be sensibly evaluated by the appellate court without examining the trial evidence. However, that is not the case here.

As will be developed, the trial court did not purport to rely on *any* of the specific bases in rule 413 which authorize the removal of a defendant from presumptive ineligibility for probation, and *none* of the reasons proffered by Dorsey himself justified the avoidance of the statutory prohibition. Thus, the details of the evidence are not significant and the record presented is sufficient to show an abuse of discretion.[7] The same considerations apply to the issue regarding fines and costs, which involved pure issues of law.

Defendant then argues that any error in the trial court's sentencing procedure or result was waived because the prosecutor failed to make a timely objection, as purportedly required by the decision in *People* v. *Scott* (1994) 9 Cal.4th 331, 356 [36 Cal.Rptr.2d 627, 885 P.2d 1040]. We find no waiver. Although *Scott* holds that ". . . complaints about the manner in which the trial court exercises its sentencing discretion and articulates its supporting reasons cannot be raised for the first time on appeal," it also recognizes that the requirement of an objection at trial is only realistic if counsel is given a "meaningful opportunity to object." (*Ibid.*) The court evidently contemplated a sort of "tentative ruling" procedure. (See *id.*, at p. 359 (conc. and dis. opn. of Kennard, J.).)

In this case, both counsel argued, with the prosecutor urging not only the imposition of a prison term, but the maximum possible. The trial court then

---

[6]All subsequent "rule" references are to the California Rules of Court.

[7]Nevertheless, the People should not be under the impression that we approve of the presentation of a record which consists in large part of the *People's* final arguments, augmented by matters outside the record which were submitted for no other apparent reason than to prejudice this court against defendant.

announced its decision, asked defendant if he accepted the terms of probation, and declared a recess. The parties were never apprised of "the sentence the court *intends* to impose" (*People* v. *Scott, supra,* 9 Cal.4th at p. 356, italics added) and the prosecutor had no opportunity, meaningful or otherwise, to object.

On the other hand, during argument *before* the trial court announced its decision, the prosecutor had strongly contested defense counsel's characterization of the case as an unusual one. (See summary of defendant's arguments, *ante.*) He argued that the factors raised by defendant were not sufficient and specifically argued that this was not a "lesser end" crime. The prosecutor also stressed that presumptive ineligibility for probation could not be overcome merely by the "he's a good guy" argument, as we also find. Thus, the trial court was fully apprised of the People's position that the factors cited by defendant were legally inadequate and that the factors set out in rule 413 simply did not exist. The trial court was not "allowed" to make an erroneous decision which it could readily have corrected, and the principles of *Scott* were satisfied.[8]

We now turn to the merits of the People's petition.

---

[8]Dorsey also cites *People* v. *Zuniga* (1996) 46 Cal.App.4th 81 [53 Cal.Rptr.2d 557], in which the court failed to state reasons for refusing to reinstate probation and instead sentencing defendant to prison. The appellate court refused to apply *Scott* to require a "tentative ruling" but characterized that opinion as merely requiring "procedural due process." (46 Cal.App.4th at p. 84.) It found such due process afforded where defendant and his attorney "had the opportunity to address the court on the sentencing issue"; it also noted that a prison term was recommended in the probation report. Furthermore, in *Zuniga* the court directly addressed defendant after pronouncing judgment, and no use was made of this opportunity to object.

*Zuniga* appears to equate the opportunity to argue for a specified result with the opportunity to object to the trial court's procedural errors in reaching a different result. To this extent it may be questionable, although we recognize that in denying review, the Supreme Court has apparently indicated that it feels no discomfort with the decision. However, *Zuniga* may also represent the appellate court's understandable disinclination to allow defendant to raise an issue of no visible merit, in that the trial court's failure to explain its refusal to reinstate probation certainly appeared to be harmless error. In that case, defendant was placed on probation after pleading guilty to the sale of cocaine. Two months later, he was arrested for possessing cocaine for sale. The reason for the refusal to reinstate probation is obvious.

In our case, by contrast, the probation report noted that exceptional circumstances did not exist and although a grant of probation was a possibility, it was certainly neither inevitable nor even reasonably foreseeable. Nor did the trial court's error consist of a correctable omission, but a failure to follow the law. Finally, although the trial court asked *Dorsey* if he agreed to the terms of probation, it did not offer the prosecutor a further opportunity for comment. In these circumstances, the opportunity for argument *before* the decision did not obviate the need to provide an opportunity for objection once the court indicated its intended decision.

## A.

### The Grant of Probation

██ In reviewing a grant of probation, we generally apply the "abuse of discretion" standard. (*People* v. *Cazares* (1987) 190 Cal.App.3d 833, 837 [235 Cal.Rptr. 604]; *People* v. *Superior Court (Du), supra,* 5 Cal.App.4th at p. 831.) "Abuse of discretion," in turn, depends on whether the trial court's order " 'exceeds the bounds of reason.' " (*People* v. *Warner* (1978) 20 Cal.3d 678, 683 [143 Cal.Rptr. 885, 574 P.2d 1237].) Obviously, a decision which simply ignores statutory requirements constitutes an abuse of discretion.

██ As discussed above, Dorsey was doubly presumptively ineligible for probation—once, because he was convicted of embezzling public funds, and again, because the amounts taken exceeded $100,000. Rule 413 addresses the situation of those found presumptively ineligible for probation—a situation commonly circumscribed by language such as "except in unusual cases where the interests of justice would be best served."[9] Rule 413(b) states that where there is presumptive ineligibility, ". . . the court should apply the criteria in subdivision (c) to evaluate whether the statutory limitation on probation is overcome; and if it is, the court should then apply the criteria in rule 414 to decide whether to grant probation."[10]

Rule 413 contains only limited criteria which can clearly satisfy the condition that a grant of probation must be in the interests of justice because the case is unusual. First, rule 413(c)(1) indicates that facts related to the probation ineligibility itself may show an unusual case. The first example covers cases in which the limiting fact is "substantially less serious than the circumstances typically present in other cases involving the same probation limitation." A second category is restricted to an even narrower situation, that of the defendant whose probation ineligibility stems from a prior felony conviction: Is his *current* conviction less serious than the prior, and has he been free of incarceration and serious law violations for a substantial length of time? It is not argued that this could apply to Dorsey.

---

[9]Both sections 1203, subdivision (e)(7) and 1203.045, subdivision (a) include this precise language.

[10]We do not disagree with Dorsey's argument that the existence of a single one of the rule 413 factors may be sufficient to justify a finding that the case is "unusual" or that the interests of justice would be served by a grant of probation. The difficulty here is that *none* of the factors applies, as we will explain.

Rule 413(c)(2) then turns the focus to defendant. Did he act out of great provocation, coercion, or duress?[11] Or did the crime result from a mental condition which could be successfully treated? Is he youthful or aged, with no serious prior record?

It is immediately apparent that *none* of these factors exists here. Dorsey's crimes cannot, by any stretch of the imagination, be termed less serious than similar offenses. With respect to section 1203.045, subdivision (a), the point is obvious; the evidence indicated a gap of over $200,000 between the funds he obtained and the funds for which he was able to account, far more than the $100,000 necessary to trigger the probation limitation. Any argument on this point fails almost as fast under section 1203, subdivision (e)(7). Dorsey was not just any public official; he was the sheriff—the one official in the county specifically dedicated to, and entrusted with, upholding and enforcing the law. Furthermore, the funds taken came from specific grants intended to fight drugs—a matter of paramount public concern. Dorsey's acts extended over a period of several years and were made possible only through his repeated representations to the holders of the county purse strings that such funds were needed for law enforcement purposes. Dorsey was not a minor public employee surreptitiously endorsing over the occasional check; he operated at the highest level of public trust and obtained funds for continued embezzlement through positive misrepresentations. If anything, the crimes were substantially *more* serious than the usual.

Dorsey concedes that most of the above factors cannot apply to him. However, he argues that because he has no prior record, his offenses were less serious than usual. But this applies the wrong standard; his previous good conduct does not alter the nature of his current crimes. He points to a claimed paucity of evidence that he benefitted from the crimes,[12] but the fact that the prosecution may not have been able to prove what defendant did with the money does not detract from the jury's finding that he took it.[13]

Turning to rule 413(c)(2), there was no evidence that defendant did act out of provocation, coercion, or duress; his defense was that the money was

---

[11]*People* v. *Superior Court* (*Du*), *supra,* was a case in which a Korean shopkeeper fatally shot a teenage girl who may, or may not, have been attempting to shoplift and threatening the defendant. The trial court found that defendant acted as a result of provocation, and that her gun use (the limiting fact) was less serious than usual because she had not armed herself for crime, but merely seized a weapon kept in the shop for protection. The defendant thus satisfied two of the rule 413 factors. The case gives a useful example of when a limiting fact is less serious than usual.

[12]This argument does not sit well, in light of Dorsey's attack on the adequacy of the record presented by the People.

[13]We note that the People unsuccessfully attempted to introduce evidence of defendant's frequent visits to gambling casinos during the period covered by the takings. While no such evidence was presented to the jury, the possibility of such evidence merely makes the point that not every expenditure of money leaves a trail or results in the acquisition of a material

properly spent. Nor was there evidence of a treatable mental condition—and certainly no treatment was required as a condition of probation, which would have been necessary under the rule had the court relied on this basis. Dorsey was 47 years of age at the time of his conviction and was charged with committing the offenses while he was between 38 and 43 years of age; he was neither youthful nor aged.

Thus, none of the factors specifically included in rule 413 exists here. However, we recognize that rule 413 is not on its face exclusive in its list of circumstances which may take a defendant out of presumptive ineligibility for probation. (See also rule 408(a), which expressly provides that "The enumeration in these rules of some criteria for the making of discretionary sentencing decisions does not prohibit the application of additional criteria reasonably related to the decision being made.") However, we hold that the language of the rule is not to be read expansively. In *People* v. *Superior Court (Du)*, *supra*, the court commented that a trial court is "required" to apply the criteria of rule 413 (then rule 416) in determining whether a case is unusual. The rule itself, although purporting merely to give examples, does so in a limited context. That is, both subdivisions rule 413(c)(1) and rule 413(c)(2) give examples of *particular types of facts*: facts showing that the circumstance giving rise to the probation restriction is of borderline applicability, or that the defendant's culpability, in a moral or ethical sense, was less than would be typically true. The rule does not purport to give the trial court authority to decide that any other particular type of factor may be used to meet the "unusual" standard. We need not decide what other specific facts or cirumstances might properly be taken into consideration, however, because we are satisfied that none of the factors which the trial court accepted at Dorsey's urging are sufficient.

First, in his statement in mitigation, Dorsey pointed to his long and respected career in law enforcement. As we suggested above, this factor, if anything, makes the offenses *worse*. Furthermore, it cannot logically be used to avoid the limitation on probation. We think it obvious that public officials and peace officers, as a class[14]—especially those given access to public money—have previously displayed good character and have little history of serious legal difficulties. If this was enough to take them out of presumptive ineligibility, the enactment of the ineligibility would have little effect.

The Legislature, however, determined that a breach of the public trust by such persons warranted incarceration *as a rule*. ■ In construing a statute, our primary objective is "to ascertain and effectuate legislative intent."

object in return. Certainly it does not appear that Dorsey took the money and applied it to any morally meritorious use; for example, he proffered no signed receipt from Mother Theresa.

[14]Section 1203, subdivision (e)(7) includes both public officials and peace officers within its scope.

(*Burden* v. *Snowden* (1992) 2 Cal.4th 556, 562 [7 Cal.Rptr.2d 531, 828 P.2d 672].) A construction which would make it possible for a substantial proportion of the persons falling under section 1203, subdivision (e)(7) by virtue of their public employment to escape the presumptive ineligibility for probation *purely due to factors intertwined with the fact of their public employment,* would not serve the legislative purpose here.[15]

The same goes for Dorsey's showing of support in the community. When the Legislature has mandated that those convicted of a certain offense be eligible for probation only in unusual cases, the grant of probation should not depend on a popularity contest. The jury found Dorsey guilty; he does not become entitled to consideration for probation simply because a number of people do not believe that he committed the offense.

Finally, Dorsey argued that there were no intelligible standards governing his use of "special funds" as established and defined in Government Code section 29430 et seq. and therefore any misuse was excusable; or, alternatively, that his conviction might be reversed on appeal due to ambiguity or lack of clarity in the statutes. This is of no assistance to defendant.

The Government Code sections cited above provide for the establishment by counties of "sheriff's special appropriations." Government Code section 29435 permits the sheriff to use such funds for "(a) His expenses incurred in criminal cases arising in the county. [¶] (b) Expenses necessarily incurred by him in the preservation of peace. [¶] (c) Expenses necessarily incurred by him in the suppression of crime." Even without a full transcript record, it is apparent that Dorsey cannot rely on any vagueness in this statute as creating an "unusual case." As the People point out, the jury was instructed on *specific* intent with respect to all counts except embezzlement, including the misappropriation of public funds, misuse of public funds, false accounts, and false vouchers. (§§ 424, subds. 1-3, 72.)[16] The jury returned guilty verdicts on all of these counts. Thus, it clearly rejected Dorsey's claims of proper use *or* confusion. By a finding made beyond a reasonable doubt, statutory

---

[15]Because, at this point, we find Dorsey ineligible under the embezzlement limitation, we need not discuss the $100,000 limit. However, as will become clear later, there is no reason why upstanding previous character should constitute an "unusual case—interests of justice" exception here either.

[16]For example, with respect to misappropriation, the jury was instructed that it must find that defendant must have had "actual knowledge that the particular appropriation is not authorized by law." For misuse, "the defendant must have actual knowledge that the use is not authorized by law." With respect to these counts, the jury was further instructed that "defendant must act with the knowledge that he is appropriating or using public funds in a manner which is not authorized by law."

Although the jury was not so instructed with respect to the embezzlement count, it is apparent that the charges all involved the same takings. Thus, the guilty verdict on the counts

ambiguity played no role in this case and does not give it any unique character.

To summarize, then, none of the criteria listed in rule 413(c) applies in Dorsey's favor. None of the factors on which the trial court relied is of a type recognized in the rule, and none otherwise makes this an unusual case or weighs in favor of Dorsey in an evaluation of the interests of justice. While the factors—and the trial court's belief that Dorsey could contribute to society through community service—would be properly considered *if* Dorsey were eligible for probation (see rule 414), mere suitability for probation does not overcome the presumptive bar set out in sections 1203 and 1203.045. Rule 413 itself evidently contemplates a two-step process when it states that "[if] the statutory limitation on probation is overcome . . . the court should *then* apply the criteria in rule 414 to decide whether to grant probation." (Italics added.) As we have explained above, if the statutory limitations on probation are to have any substantial scope and effect, "unusual cases" and "interests of justice" must be narrowly construed and, as rule 413 provides, limited to those matters in which the crime is either atypical or the offender's moral blameworthiness is reduced. A previous course of good conduct and good standing in the community is not "reasonably related" (see rule 408(a)) to the decision of whether an offense constitutes an "unusual case where the interests of justice would be best served" by granting probation.

We decline to reach the issue, raised by the People, of whether probation would be justified if the presumption of ineligibility were overcome. We will remand for reconsideration of the eligibility issue as well as the matter of fines and costs. (See pt. B, *post.*)

## B.

### *Failure to Order Payment of Fines and Costs*

The People also point out that although the trial court imposed a $1,600 restitution fine under section 1202.4, subdivision (b), it failed to order defendant to pay a victim-restitution fine under section 1202.4, subdivision (f). That section provides that the court "shall require" the payment of such a fine in every case in which the victim has suffered economic injury. Although the court does have discretion not to order such restitution, it must state "clear and compelling reasons" on the record for not doing so. (§ 1202.4, subd. (g).) No such reasons were stated here and we do not accept

---

instructed as specific intent crimes necessarily implies that the jury found that defendant was aware of the impropriety of the embezzlement taking as well.

Dorsey's argument that the reasons given for granting him probation must be applied to this decision by implication. Nor do we decide whether they would be sufficient.

■ Similarly, Revenue and Taxation Code former section 19405, subdivision (a)[17] provides that any person convicted of filing a false return shall be fined, imprisoned, or both *"together with the costs of prosecution."* (Italics added.) Dorsey argues that the court had the power to elect *not* to impose these costs, but his citation to section 1202.4, subdivision (n) is not persuasive, because that provision applies only to restitution fines and orders. Although an order for payment of "costs of prosecution" under the Revenue and Taxation Code is obviously of a restitututional nature, section 1202.4 is concerned with specific types of mandatory restitutution as set forth in that statute. We do not construe subdivision (n) as applying to requirements for compensatory-type payments required by other statutes which may be scattered throughout the various codes. Defendant cites us to no other authority justifying ignoring the requirement that costs of prosecution be imposed upon a conviction under the Revenue and Taxation Code statute, and we have found none. We will direct the trial court to consider these matters on remand.

## C.

### Appointment of a New Judge

■ The People request that we direct that the matter be assigned to a new judge pursuant to Code of Civil Procedure section 170.1, subdivision (c). That statute provides that "At the request of a party or on its own motion an appellate court shall consider whether in the interests of justice it should direct that further proceedings be heard before a trial judge other than the judge whose judgment or order was reviewed by the appellate court." The power is to be exercised sparingly. (*People* v. *Crew* (1991) 1 Cal.App.4th 1591, 1609, fn. 13 [2 Cal.Rptr.2d 755].) We have considered the matter, but decline to make the requested order.

The People point to the following acts by the trial court as persuasive evidence of "an animus inconsistent with judicial objectivity." (See *People* v. *Gulbrandsen* (1989) 209 Cal.App.3d 1547, 1562 [258 Cal.Rptr. 75].) First, they assert that the trial court exonerated bail and granted Dorsey release on

---

[17]The statute was renumbered as section 19705 in 1994, after the offenses here were committed.

his own recognizances "virtually at the moment of his conviction." Second, they rely on the order of probation here.

On the first point, we have no record of any hearing concerning the release. Although the People attempt to insinuate that the decision, coming quickly after a three-and-one-half-month trial, showed that the trial court had *improperly* made up its mind in advance, we cannot so conclude; the length of the trial also gave the trial court ample opportunity to observe defendant and calculate the extent to which he posed a risk of flight or future harm to the community. (§ 1272.1, subds. (a), (b).)

On the second point, mere judicial error is not conclusive evidence of bias or grounds for disqualification, and this has been held particularly true in cases of sentencing error, given the often-complex rules relating to the subject. (*Mackie* v. *Dyer* (1957) 154 Cal.App.2d 395, 400 [316 P.2d 366]; *People* v. *Gulbrandsen, supra,* 209 Cal.App.3d at p. 1562.) We note that immediately prior to sentencing, the trial court denied Dorsey's motions for new trial and dismissal or acquittal. (§§ 1118.1, 1181.)[18] The court therefore was patently not determined to leap at any opportunity to rule in his favor.[19]

We have agreed that there were errors in the failure to impose costs and fines, but lacking the People's statement in aggravation, we cannot tell whether these points were stressed. Neither point was even mentioned by the prosecutor at the sentencing hearing and the probation report ignores the questions of victim-loss restitution and costs under the Revenue and Taxation Code statute. Thus, the court's inaction here is explicable as the result of inadvertence rather than intent. Although we have also found that it abused its discretion in placing Dorsey on probation in the absence of any articulated appropriate factors, the record does not require the conclusion that the trial court deliberately ignored the provisions of rule 413; we have only found that it failed to apply the proper standards, not that it wilfully disregarded them. We have no doubt that the trial court will be able to reevaluate the matter in light of the views expressed in this opinion.

---

[18]We have no copy of any of these motions. A motion for acquittal under section 1118.1 is made *before* the case is submitted to the jury and it is unclear why or how the motion was later presented to the court. The court referred to "Code of Civil Procedure" section 1118.1, but we deem this an inadvertence as there is no such section.

[19]We note that if—as seens probable—defendant moved for a new trial on the issue of insufficient evidence (§ 1181, subd. 6), the trial court would have been able to exercise broad discretion in reweighing the evidence. (*People* v. *Davis* (1995) 10 Cal.4th 463, 523-524 [41 Cal.Rptr.2d 826, 896 P.2d 119].) If in fact it failed to grant a new trial on this basis, this would be good evidence that it is not determined to let defendant "off easy" despite the law and evidence.

The order granting probation is reversed. The matter is remanded for resentencing in light of the views expressed in this opinion.

Ramirez, P. J., and Richli, J., concurred.

The petition of real party in interest for review by the Supreme Court was denied February 19, 1997.