Filed 8/5/14  P. v. Randolph CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>GRANT LEWIS RANDOLPH,<br><br>    Defendant and Appellant. | G048628<br><br>(Super. Ct. No. 06HF0575)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Steven D. Bromberg, Judge.  Affirmed.

Leonard J. Klaif, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Stacy Tyler, Deputy Attorneys General, for Plaintiff and Respondent.

Although appellant seriously injured his wife by throwing her off their second-story balcony, he contends the trial court abused its discretion in denying his

request for probation and sentencing him to prison.  We could hardly disagree more.  Finding ample justification for the trial court's sentencing decision, we affirm the judgment.

FACTS

Appellant met his wife Jiraporn in Thailand in 1998.  Their son was born the following year, and in 2003, they moved to Orange County.  The family was living at an apartment complex in Laguna Hills when this case arose in 2006.

By all accounts, appellant and Jiraporn had an argumentative relationship.  As was often the case, neighbors heard yelling coming from their apartment on the night of March 23, 2006.  At one point, appellant shouted, "That's it, bitch.  It's over."  He walked out onto their second-story balcony, where Jiraporn was standing, and wrapped his arms around her, "bear hug" style.  Then in one swift motion, he flipped her over the edge of the balcony.  Although Jiraporn hit the ground hard, appellant showed little concern for her.  When a neighbor asked him what he had done to Jiraporn, he replied, "Don't worry.  We argue all the time."

But there was plenty of cause for concern.  Jiraporn's contorted body lay twitching on the ground, with blood coming out of both her ears.  Neighbors were tending to her by the time appellant came down to the scene with their son.  Appellant tried to assure everyone that Jiraporn was fine, but knowing otherwise, they had already called 911.

When the police arrived, appellant claimed he pushed Jiraporn while they were arguing and she fell over the balcony.  He was arrested and taken to the police station, where testing revealed his blood-alcohol level was .13 percent.  Jiraporn was transported to the hospital and diagnosed with a fractured skull and severe traumatic brain injury.  Following cranial surgery, she spent a month in the hospital undergoing physical, occupational and speech therapy.

2

At the time of the incident, appellant was 60 years old. He had never been in trouble with the law before but now found himself facing serious charges. When questioned by investigators, he initially claimed Jiraporn fell off the balcony by herself, while leaning back in a chair. Then he claimed she "inadvertently" fell over the edge while he was shaking her. While admitting he and Jiraporn had a tumultuous relationship, he claimed nothing of this sort had ever happened before. However, according to Jiraporn, appellant once held her over their balcony by her ankles before pulling her back inside.

It took seven years for the case to get to trial. During that time, appellant was free on bail and completed a domestic violence program. He also participated in individual and family counseling and reconciled with Jiraporn. They were reunited with their son in 2008, after successfully completing a family reunification plan that was administered by social services.

Appellant was tried for attempted premeditated murder and domestic battery with corporal injury. It was also alleged he inflicted great bodily injury during the offenses. At the end of the prosecution's case-in-chief, the court granted appellant's motion to dismiss the premeditation allegation for insufficient evidence, and, as it turned out, the jury was unable to reach a verdict on the underlying charge of attempted murder. However, it did convict on the battery count and find the great bodily injury allegation to be true. As explained more fully below, the court turned down appellant's request for probation and sentenced him to seven years in prison.

DISCUSSION

Appellant contends the trial court abused its discretion in denying his request for probation, but that is clearly not the case.

In light of the jury's true finding on the great bodily injury allegation, appellant was presumptively ineligible for probation. (Pen. Code, § 1203, subd. (e)(3).) However, in speaking with the probation officer before sentencing, appellant claimed

3

granting him probation would be in everyone's best interest because he had reconciled with Jiraporn and was an integral part of their family. Not only was he the main bread-winner, he was actively involved in raising their son, who was now a teenager. Appellant also submitted several reference letters from family and friends, attesting to his peaceful character.

Nevertheless, the probation officer advised against probation and recommended appellant be sentenced to prison, given the violent nature of his crime. While recognizing appellant had undergone extensive counseling since the crime occurred, the probation officer was concerned because Jiraporn was downplaying the seriousness of the offense and she was heavily reliant on appellant for support, given her limited English skills. It was the probation officer's opinion that, "Even though [appellant and Jiraporn] have reconciled, . . . her dependency upon him makes her even more vulnerable to another assault, which could be potentially fatal."

At the sentencing hearing, defense counsel characterized appellant's actions in this case as "an absolute deviation from who he is and who he's been throughout his life." Given that appellant had no prior record and was now almost 68 years old, defense counsel urged the court to go easy on him. However, in light of the seriousness of Jiraporn's injuries, the prosecutor asked for the maximum term of nine years.

In rendering its decision, the court was struck with the violent nature of the crime and the fact Jiraporn was much smaller than appellant. The court did not believe appellant's claim to police that the incident was an accident, nor did it place much stock in his reference letters. The court did sense appellant was remorseful and committed to his son, but in the end, it felt appellant was still "an angry person" who had "a volatile nature" and was a "serious danger to society." Despite appellant's favorable qualities, the court found that "even with a structured anger management program, . . . there would not be a likelihood [appellant] would succeed upon a grant of probation nor [are there]

4

any unusual circumstances that would warrant a grant of probation." Therefore, in lieu of that option, the court sentenced appellant to the midterm of seven years in prison.

When, as here, a defendant is presumptively ineligible for probation, probation may not be granted except in the "unusual" case where it would serve the interests of justice. (Pen. Code, § 1203, subd. (e).) This exception is to be "narrowly construed and . . . limited to those matters in which the crime is . . . atypical or the offender's moral blameworthiness is reduced." (*People v. Superior Court (Dorsey)* (1996) 50 Cal.App.4th 1216, 1229.)

California rule of Court 4.413(c) sets forth the circumstances that "may indicate the existence of an unusual case in which probation may be granted if otherwise appropriate."[1] Under that rule, the court may find the presumption against probation overcome if the facts are substantially less serious than in other cases involving the same probation limitation, the offense was committed under provocation, coercion or duress, the defendant has a mental health issue, or the defendant is "youthful or aged, and has no significant record of prior criminal offenses." (*Ibid*.) Even if the court does find the presumption overcome, it may still deny probation if other factors, such as the seriousness of the crime and the vulnerability of the victim, do not favor the defendant. (*People v. Superior Court (Du)* (1992) 5 Cal.App.4th 822, 829-831 [discussing Rule 4.414.) A court's decision denying probation will not be set aside on appeal unless it constitutes a clear abuse of discretion, meaning it is arbitrary, capricious or exceeds the bounds of reason. (*Id*. at p. 831.)

In this case, the trial court's decision to deny appellant probation was manifestly reasonable. Appellant argues his "advanced age, his counseling and mental health efforts while out on bail, and his spotless record both before and after the commission of the crime underlying this action permeate each and every one of the

---

[1] All further rule references are to the California Rules of Court.

5

factors within Rule 4.413." Assessing those factors, it is true that appellant was nearly 68 years old at the time of sentencing, and prior to this case, he had never been convicted of a crime. But, as reflected in the probation officer's presentence report, Jiraporn did reveal that appellant had dangled her from their balcony by her ankles on a previous occasion.

Moreover, it does not appear that the gravity of the present offense was substantially less serious than other cases involving great bodily injury, the offense was committed under provocation, coercion or duress, or appellant has any mental health issues. To the contrary, appellant attacked and grievously injured his defenseless wife out of sheer anger. Not only did he cause Jiraporn to incur a severe brain injury which necessitated months of hospitalization, he no doubt inflicted considerable emotional distress on her in the process. One can only imagine the horrible fear Jiraporn must have felt when appellant picked her up and flipped her over their balcony. To make matters worse, their young son was in the vicinity at the time of the incident. It's unclear from the record whether he saw what his father did, but he was exposed to the aftermath, when his poor mother lay injured on the ground. And to top it off, appellant was utterly unapologetic at the scene. It is clear he was much more concerned about himself than his wife in her time of need. In fact, when appellant was interviewed by the police at the scene, he did not even ask them how Jiraporn was doing.

On this record, it is readily apparent the trial court did not abuse its discretion in finding the presumption against probation was not overcome. Indeed, appellant concedes the facts related to the crime are not in his favor. While he questions the trial court's finding that he would be unlikely to succeed on probation, this is one of those cases where the facts speak largely for themselves. The nature and gravity of the offense, coupled with appellant's callous reaction to the crime, were so egregious that the trial court could reasonably find appellant remains a danger to society, despite his rehabilitative efforts and his relatively advanced age. While appellant was able to control

himself while he had charges hanging over his head, there is no guarantee he could perform well without that moderating influence.  We therefore uphold the court's sentencing order.  There is no reason to disturb its decision to deny appellant probation and sentence him to prison.

DISPOSITION

The judgment is affirmed.


                                        BEDSWORTH, J.

WE CONCUR:


O'LEARY, P. J.


MOORE, J.


7