Filed 10/30/20  P. v. Craine CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>TIMOTHY CRAINE,<br><br>Defendant and Appellant. | F074622<br><br>(Super. Ct. No. DF012338A)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Robert S. Tafoya, Judge.

Caitlin M. Plummer, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Christopher J. Rench, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Timothy Craine was convicted by jury of indecent exposure. It was his sixth such conviction, thus making the offense a felony. He was sentenced to seven years in prison.

Craine represented himself at trial. On appeal, he contends the trial court breached a sua sponte duty to determine his mental competence under Penal Code section 1368 (all further statutory references are to this code). In a related claim, he argues the trial court should have assessed his competence to proceed in propria persona under a "heightened standard" as compared to the one used to determine a defendant's competence to stand trial. He further alleges sentencing error based on the trial court's failure to state its reasons for imposing the maximum prison term. Lastly, Craine argues for retroactive application of section 1001.36, which authorizes pretrial diversion in certain cases involving mentally disordered offenders.

In a prior opinion, we affirmed the judgment in full. The California Supreme Court has instructed us to to vacate that decision and reconsider the cause in light of *People v. Frahs* (2020) 9 Ca1.5th 618 (*Frahs*). Having done so, we now conditionally reverse the judgment and remand the matter for further proceedings.

**FACTUAL AND PROCEDURAL BACKGROUND**

In early 2016, Craine was residing in a special housing unit at the North Kern State Prison. He had recently been classified as a mentally disordered offender (MDO) (see § 2960 et seq.) and placed on a "suicide watch," which entailed continuous monitoring by a certified nursing assistant (CNA). On or about January 13, 2016, Craine stripped naked in front of a female CNA and began masturbating. A second CNA witnessed this behavior, as did a correctional officer who intervened.

Craine was subsequently transferred to a Department of State Hospitals facility in Atascadero. He was later charged with one count of felonious indecent exposure (§ 314, subd. 1). For enhancement purposes, he was alleged to have served five prior prison terms (§ 667.5, subd. (b)).

2.

The record does not identify the nature of Craine's mental disorder, but he remained in Atascadero until being transferred to the Kern County Jail in connection with this case. On April 7, 2016, Craine appeared at a preliminary hearing with appointed counsel. Eleven days later, he was represented by appointed counsel during another court proceeding. In June 2016, shortly before trial, Craine successfully moved to represent himself pursuant to *Faretta v. California* (1975) 422 U.S. 806 (*Faretta*). He acknowledged his constitutional rights and unequivocally waived the right to counsel, both orally and in writing.[1]

A three-day trial commenced on June 15, 2016. Craine presented arguments on motions in limine, participated in the jury selection process, gave opening and closing statements, and cross-examined two of the three witnesses who testified. He disputed a prior prison term allegation concerning a conviction for second degree burglary, and one such allegation was dismissed at the People's request.

The jury returned a guilty verdict and found the enhancement allegations to be true. The trial court imposed the upper term of three years and added four consecutive one-year enhancements for the prison priors. A handwritten notice of appeal, which was served upon the district attorney's office and belatedly received by the trial court, was deemed to have been timely filed.

## DISCUSSION

### I. The *Faretta* Motion Was Properly Granted

The constitutional right to due process prohibits the trial of a mentally incompetent criminal defendant. (*In re R.V.* (2015) 61 Cal.4th 181, 188.) Under federal law, the test for competence is whether the defendant "'has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a

---

[1] The record contains a preprinted *Faretta* form, which Craine filled out and signed. The form is file stamped June 7, 2016, but it was purportedly executed on June 9, 2016. Craine's motion was orally made and ruled upon on the latter date.

3.

rational as well as factual understanding of the proceedings against him.'" (*Dusky v. United States* (1960) 362 U.S. 402 (*Dusky*).) In California, section 1367 codifies a nearly identical standard. "A defendant is mentally incompetent … if, as a result of mental disorder or developmental disability, the defendant is unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner." (*Id.*, subd. (a).)

In *Faretta*, the United States Supreme Court recognized a constitutional right to self-representation. (*Faretta*, *supra*, 422 U.S. at p. 832.) A *Faretta* motion must be granted if the defendant's waiver of the right to counsel is timely, competent, knowing, and voluntary. (*Id.* at p. 835; *Godinez v. Moran* (1993) 509 U.S. 389, 399–400 (*Godinez*).) "The focus of a competency inquiry is the defendant's mental capacity; the question is whether he has the *ability* to understand the proceedings. [Citation.] The purpose of the 'knowing and voluntary' inquiry, by contrast, is to determine whether the defendant actually *does* understand the significance and consequences of a particular decision and whether the decision is uncoerced." (*Godinez*, *supra*, at p. 401, fn. 12.)

As held in *Indiana v. Edwards* (2008) 554 U.S. 164 (*Edwards*), state courts may, but need not, deny self-representation to defendants who are competent to stand trial under the *Dusky* standard but nevertheless lack the mental health or capacity to forgo the assistance of counsel. (*Edwards*, *supra*, at p. 174; *People v. Johnson* (2012) 53 Cal.4th 519, 523 (*Johnson*).) The *Edwards* opinion refers to such individuals as "gray-area defendants." (*Edwards*, *supra*, at pp. 172–174.) In *Johnson,* the California Supreme Court concluded trial judges "should have discretion to deny self-representation to gray-area defendants." (*Johnson*, *supra*, at p. 528.) However, "[b]ecause the *Edwards* rule is permissive, not mandatory, … *Edwards* 'does not support a claim of federal constitutional error in a case like the present one, in which [the] defendant's request to represent himself was granted.'" (*Id.* at p. 527, quoting *People v. Taylor* (2009) 47 Cal.4th 850, 878.)

4.

The *Johnson* opinion goes on to discuss "the standard for trial courts to employ when deciding whether to deny self-representation under *Edwards* .…" (*Johnson*, *supra*, 53 Cal.4th at p. 529.) "*Edwards* described competence to represent oneself at trial as the ability 'to carry out the basic tasks needed to present [one's] own defense without the help of counsel.' (*Edwards*, *supra*, 554 U.S. at pp. 175–176.) It also said the states may deny self-representation to those competent to stand trial but who 'suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves.'" (*Johnson*, *supra*, at p. 530.) The California Supreme Court declined to adopt a more specific standard. (*Ibid*.)

Craine alleges the trial court erred by granting his *Faretta* motion without first ordering an assessment of his mental competence. In making this argument, he asks us to formulate a new rule under which trial courts "must apply the heightened *Edwards* standard whenever a defendant seeks to represent himself." We decline the request. On the question of error, we are constrained by case law.

A defendant is presumed to be competent. (§ 1369, subd. (f); *People v. Medina* (1990) 51 Cal.3d 870, 881.) "A trial court need not routinely inquire into the mental competence of a defendant seeking self-representation. It needs to do so *only if it is considering denying self-representation due to doubts about the defendant's mental competence*." (*Johnson*, *supra*, 53 Cal.4th at p. 530, italics added.) Craine acknowledges the quoted language and essentially argues it should be disregarded. Elsewhere in his briefing, he suggests the high court did not mean what it said. We are unpersuaded, especially considering the same point was reiterated in *People v. Espinoza* (2016) 1 Cal.5th 61, 80 and *People v. Mickel* (2016) 2 Cal.5th 181, 208 (*Mickel*).

Craine's *Faretta* motion was heard and ruled upon by the Honorable Marcos A. Camacho, whose role in the case was otherwise limited to presiding over the preliminary hearing. Appointed counsel informed Judge Camacho of Craine's desire to proceed in propria persona during a trial confirmation hearing. Counsel did not voice any concerns

5.

regarding Craine's competence, and Craine's behavior in front of Judge Camacho demonstrated full cognizance of his actions and the nature of the proceedings.

Craine referenced "*Faretta*" while making his request to "waive my right to have an attorney counsel me." He later provided an articulate synopsis of his educational background and work history, expressed familiarity with the concept of discovery, and acknowledged the disadvantages of self-representation. He also asked for, and received, an explanation of the charges against him and his maximum sentencing exposure. Judge Camacho expressed no doubts about Craine's competence to stand trial. On the record before us, we cannot say the trial court erred by granting the *Faretta* motion without further inquiry into Craine's mental health.

## II.     Section 1368 Proceedings Were Not Required

"'Even when a defendant is competent at the commencement of his trial, a trial court must always be alert to circumstances suggesting a change that would render the accused unable to meet the standards of competence to stand trial.' [Citation.] State constitutional authority is to the same effect." (*People v. Lightsey* (2012) 54 Cal.4th 668, 690–691.) Accordingly, Craine alleges the trial court had a sua sponte duty to order an evaluation of his mental competence. The claim is governed by section 1368.

Under section 1368, if "a doubt arises in the mind of the judge as to the mental competence of the defendant, he or she shall state that doubt in the record and inquire of [defense counsel] whether, in the opinion of the attorney, the defendant is mentally competent. If the defendant is not represented by counsel, the court shall appoint counsel. At the request of the defendant or [defense counsel] or upon its own motion, the court shall recess the proceedings for as long as may be reasonably necessary to permit counsel to confer with the defendant and to form an opinion as to the mental competence of the defendant at that point in time." (*Id*., subd. (a).) If counsel or the trial court believes the defendant is or may be mentally incompetent, a hearing to determine the

6.

question of competence should be conducted pursuant to sections 1368.1 and 1369. (§ 1368, subd. (b).)

Although section 1368 is phrased in terms of whether a doubt exists "in the mind of the judge," case law holds that substantial evidence of incompetence triggers the right to a competency hearing as a matter of law. (*People v. Stankewitz* (1982) 32 Cal.3d 80, 91–92; *People v. Pennington* (1967) 66 Cal.2d 508, 518.) The sua sponte duty to conduct a competency hearing may arise at any time prior to judgment. (*People v. Rogers* (2006) 39 Cal.4th 826, 847 (*Rogers*).) If evidence of the defendant's incompetence is less than substantial (and the court has not expressed a doubt as to his competence), the decision to conduct such a hearing is a matter of discretion. (*Pennington*, *supra*, at p. 518.) "A trial court's decision whether or not to hold a competence hearing is entitled to deference, because the court has the opportunity to observe the defendant during trial." (*Rogers*, *supra*, at p. 847.)

Substantial evidence of incompetence is evidence "that raises a reasonable or bona fide doubt concerning the defendant's competence to stand trial." (*Rogers*, *supra*, 39 Cal.4th at p. 847.) Such evidence may come from any source, and the trial court "must consider all of the relevant circumstances." (*People v. Howard* (1992) 1 Cal.4th 1132, 1164.) "If a defendant presents merely 'a litany of facts, none of which actually related to his competence … to understand the nature of [the] proceeding[s] …,' the evidence will be inadequate to support holding a competency hearing. [Citation.] In other words, a defendant must exhibit more than bizarre, paranoid behavior, strange words, or a preexisting psychiatric condition that has little bearing on the question of [his competence to stand trial]." (*People v. Ramos* (2004) 34 Cal.4th 494, 508.)

The threshold for competence is low. "Requiring that a criminal defendant be competent has a modest aim: It seeks to ensure that he has the capacity to understand the proceedings and to assist counsel." (*Godinez*, *supra*, 509 U.S. at p. 402.) Even under the heightened *Edwards* standard, a self-represented defendant is competent if he or she is

7.

capable of performing "basic trial tasks," e.g., making motions, presenting arguments, participating in voir dire, questioning witnesses, and addressing the judge and jury. (*Mickel*, *supra*, 2 Cal.5th at pp. 208–209.)

Craine emphasizes his MDO classification, the fact he was on a suicide watch when the charged offense occurred, and his transfer to a Department of State Hospitals facility a few months before trial. These are relevant facts, but they are not dispositive. "[E]ven a history of serious mental illness does not necessarily constitute substantial evidence of incompetence that would require a court to declare a doubt concerning a defendant's competence and to conduct a hearing on that issue." (*People v. Blair* (2005) 36 Cal.4th 686, 714.) The same is true of suicidal ideations. (*Rogers*, *supra*, 39 Cal.4th at p. 848.) "By definition, every mentally disordered offender has previously been deemed competent to stand trial, and the premise of the MDO statute is that severe mental disorders are 'treatable.'" (*People v. Blackburn* (2015) 61 Cal.4th 1113, 1129.) "The potentially transitory and treatable nature of mental illness and the potentially limited areas of functioning impaired by such illness preclude any categorical inference that an MDO defendant [is incompetent]." (*Ibid*. [discussing competency to waive the right to a jury trial in a civil commitment proceeding].)

Craine argues he "often had substantial difficulty with communication" during trial, "appeared confused about which matters were being discussed, failed to present a coherent defense, and engaged in several rants that were both legally irrelevant and otherwise largely incoherent." We address each contention in turn.

What Craine describes as "difficulty with communication" primarily refers to his tendency to use words and expressions that were beyond the scope of his vocabulary. For example, he often misused the term "in lieu" and frequently, yet ineffectively, attempted to incorporate legalese into his statements.

Craine also downplays his performance of trial tasks such as lodging objections and cross-examining witnesses. His objections were made in proper form, e.g.,

"Objection, your Honor, foundation," "Objection, your Honor, this is speculative," "Objection, your Honor, leading the witness," "Objection, your Honor, assuming facts not in evidence." His cross-examinations addressed topics such as the witnesses' vantage points and ability to see the alleged crime, as well as the date and location of the incident. Craine was very much engaged in the process, at one point mocking a witness for asking him to "refrain" a question: he said, "I won't refrain that question, but I'll rephrase it."

Despite claiming to have "appeared confused" during trial, Craine's opening brief cites only one remark he made during motions in limine: "If I pick up any of these papers, are these discovery that can be eliminated through a motion process?" He then pivots to a discussion about his ignorance of various legal concepts and failure to present "a coherent theory of the case to the jury, other than generalities that were embedded in otherwise improper arguments." In his reply brief, Craine notes his confusion regarding "the distinction between a document being used to refresh a witness's recollection and one being admitted in evidence." These arguments concern the inapposite question of his ability to effectively represent himself.

"The focus of the inquiry is the defendant's mental capacity to understand the nature and purpose of the proceedings against him or her. [Citations.] The defendant's "'technical legal knowledge'" is irrelevant." (*People v. Blair*, *supra*, 36 Cal.4th at p. 711.) For example, in *People v. Woodruff* (2018) 5 Cal.5th 697, neither the defendant's low IQ, nor his confusion about certain legal concepts, "nor his inability to understand the court's discussion of case law" amounted to substantial evidence of incompetence. (*Id*. at pp. 722–723.) Higher courts "have accepted that the cost of recognizing a criminal defendant's right to self-representation may result "'in detriment to the defendant, if not outright unfairness."'" (*Mickel*, *supra*, 2 Cal.5th at p. 206; see *Godinez*, *supra*, 509 U.S. at p. 399 [rejecting the argument that a self-represented defendant "'"'must have greater powers of comprehension, judgment, and reason than would be necessary to stand trial with the aid of an attorney.'"'"].)

9.

Regardless of his ineptitude, there is no question Craine understood he was being prosecuted for indecent exposure and would be sentenced to prison if convicted. On the first day of trial, he rejected a four-year plea deal. In acknowledging the terms of the offer, he correctly observed that the proposed fixed term translated to "two years with half time." During opening statements, he noted a witness claimed to have "seen me gratifying and exposing my genitalia" and concluded his remarks by saying, "there is no proof beyond a reasonable doubt that these things happened."

In closing argument, Craine said, "They tried to illicitly make me sound like I was gratifying myself in a public place. This is not true.… [¶] … [¶] There was no willful exposure." These statements are significant because section 314, subdivision 1, requires that a person "willfully and lewdly" expose himself "in any public place, or in any place where there are present other persons to be offended or annoyed thereby." In other words, Craine showed a general understanding of the charge and the prosecution's evidentiary burden.

After the jury returned its guilty verdict, Craine asked the trial court for "grace" in light of the expense his confinement would impose upon the taxpayers of Kern County. The argument quickly devolved into nonsense: "That's $1,500 in revenue for every $5 that it's paid for every person that is an inmate regarding of gender, let alone all the things that are going to happen when there's going to be a huge earthquake.… It's going to be bad. And I'm trying to help health and safety. [¶] And I'm trying to ask you[—]like the more that this goes [on] with all that's being paid in for, it's costing me $50 that I can't even make five remarks to tell you that I can't get this off the record." Later, as Craine describes in his briefing, he launched into "another bizarre and untimely request for a lenient sentenc[e]."

Craine's misguided and sometimes unintelligible remarks do not establish a reasonable doubt about his competence to stand trial. During and after the bizarre comments, he presented arguments regarding his anticipated sentence and the admission

10.

of evidence concerning his prior prison terms. "Even supposing [the] defendant is correct that the various examples of his rambling, marginally relevant speeches cited in his briefing may constitute evidence of some form of mental illness, the record simply does not show that he lacked an understanding of the nature of the proceedings or the ability to assist in his defense." (*People v. Koontz* (2002) 27 Cal.4th 1041, 1064.) As stated in *In re Sims* (2018) 27 Cal.App.5th 195, "evidence of mental illness alone is insufficient to raise a doubt as to competency. [Citation.] Bizarre statements or actions, taken in isolation, do not require a court to hold a competency hearing." (*Id*. at p. 209.)

In *People v. Halvorsen* (2007) 42 Cal.4th 379, the California Supreme Court determined a trial court did not err by failing to conduct proceedings under section 1368 even though (1) a psychiatrist had testified the defendant was psychotic and (2) the defendant's trial testimony was "'filled with tangential responses to the questions of counsel and strange, irrelevant statements, often marked by a seemingly psychosis-induced preoccupation with a newly embraced religion and an obsession with his own and society's unworthiness.'" (*People v. Halvorsen*, *supra*, at p. 402.) In *People v. Welch* (1999) 20 Cal.4th 701, substantial evidence was lacking despite the defendant's disruptive behavior, history of making "nonsensical motions," and stated belief that the trial court, prosecutor, and his own counsel were "'acting in collusion with each other.'" (*Id*. at pp. 730–731 & fn. 3.) "[T]he trial court *could have* ordered a hearing on competence to stand trial," but it was not required to do so as a matter of law." (*Id*. at p. 742.)

Based on the foregoing analysis, we conclude the evidence of Craine's alleged incompetence was less than substantial. Therefore, the trial court did not have a legal duty to conduct the proceedings described in section 1368. Its failure to declare a doubt regarding Craine's competence to stand trial was a matter of discretion, and no abuse of discretion has been shown.

**III.  The Claim of Sentencing Error Was Forfeited**

The trial court did not specify its reasons for imposing the upper term for the indecent exposure conviction.  At most, it attempted to incorporate by reference the aggravating circumstances cited in the probation report, i.e., Craine's five prior convictions for the same offense and history of unsatisfactory performance on probation and parole.  Craine alleges error and requests a new sentencing hearing.  (§ 1170, subd. (b); see *People v. Fernandez* (1990) 226 Cal.App.3d 669, 679 ["merely incorporating the probation report by reference violates the spirit of the sentencing laws and fails to properly explain the basis for any sentencing choice"].)

Claims of discretionary sentencing error, including those based on a trial court "merely incorporating by reference the aggravating and mitigating circumstances in the probation report," are subject to forfeiture.  (*People v. Scott* (2015) 61 Cal.4th 363, 406.)  "'A party in a criminal case may not, on appeal, raise "claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices" if the party did not object to the sentence at trial.'"  (*Ibid*.)  Craine made no objections at the time of sentencing.

The forfeiture rule does not apply "if the trial court fails to give the parties any meaningful opportunity to object" to the sentence.  (*People v. Gonzalez* (2003) 31 Cal.4th 745, 752 (*Gonzalez*).)  For example, in *People v. Superior Court* (*Dorsey*) (1996) 50 Cal.App.4th 1216, the trial court placed the defendant on probation and "immediately declared a recess without hearing from either party."  (*Gonzalez*, *supra*, at p. 752, citing *Dorsey*, *supra*, at p. 1224.)  The defendant was presumptively ineligible for probation, but "the prosecutor had no opportunity, meaningful or otherwise, to object."  (*Dorsey*, *supra*, at p. 1224.)  Therefore, an appeal of the sentence was permissible despite the lack of any objections.  (*Ibid*.)

Here, the trial court announced its intention to "follow the recommendation of probation."  The sentence was pronounced immediately thereafter, with the judge pausing

to confer with the prosecutor about whether the upper term was three or four years. Before concluding the hearing, the trial court said, "Is there anything else that we need to take up at this time? Hearing none …." The People construe these statements as providing a meaningful opportunity for the parties to object. Craine disagrees.

Craine submits that a meaningful opportunity to object must precede the pronouncement of sentence. He relies on the following quote from *Gonzalez*, *supra*, 31 Cal.4th at page 752: "The parties are given an adequate opportunity to seek such clarifications or changes if, at *any time* during the sentencing hearing, the trial court describes the sentence it intends to impose and the reasons for the sentence, and the court thereafter considers the objections of the parties before the actual sentencing." Craine's argument, while cogent, is difficult to reconcile with *People v. Boyce* (2014) 59 Cal.4th 672 (*Boyce*), which was decided nearly 11 years after *Gonzalez*. In *Boyce*, the California Supreme Court applied the forfeiture rule under circumstances wherein the trial court, after the pronouncement of sentence, had (1) "entertained a prosecution request for clarification about the certification of the record," (2) "allowed defense counsel to enumerate his objections to the probation report," and (3) "adjourned after asking counsel if there was anything else to discuss." (*Boyce*, *supra*, at p. 731.)

In *People v. Sperling* (2017) 12 Cal.App.5th 1094, 1101–1102 (*Sperling*), Division Six of the Second District Court of Appeal interpreted *Boyce* to mean the requisite opportunity to object can occur at any time during the sentencing hearing. The issue arose as follows. "After pronouncing sentence, the court asked, 'Is there any other record either of you would like me to make?' The prosecutor replied[,] 'No.' [Defense] counsel remained silent." (*Sperling*, *supra*, at pp. 1101–1102.) Consequently, the defendant was found to have "forfeited his sentencing claims because he did not object at the time of sentencing." (*Id*. at p. 1100.)

In his reply brief, Craine argues that "*Sperling* appears to be in direct conflict with the language of *Gonzalez*." However, he does not discuss or even cite the *Boyce* opinion.

13.

We are not persuaded by his criticism of *Sperling*. In light of *Boyce* and *Sperling*, we conclude the claim of sentencing error was forfeited.

**IV.    Section 1001.36**

Section 1001.36 was enacted approximately two years after Craine was sentenced, while his appeal was pending. (Stats. 2018, ch. 34, § 24, pp. 34–37 [eff. June 27, 2018].) The statute authorizes, in lieu of criminal prosecution, a "pretrial diversion" procedure involving the placement of defendants into mental health treatment programs. (*Frahs*, *supra*, 9 Cal.5th at p. 624.) The California Supreme Court has ruled that section 1001.36 applies retroactively to cases in which the judgment was not final when the law took effect. (*Frahs*, *supra*, at pp. 624–625, 637.) Diversion is unavailable in certain types of cases, but none of those exceptions apply here. (See § 1001.36, subd. (b)(2).)

A trial court may grant pretrial diversion if it finds all of the following: (1) the defendant suffers from a mental disorder identified in the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders; (2) the disorder was a significant factor in the commission of the charged offense; (3) a medical expert has opined the symptoms motivating the criminal behavior would respond to mental health treatment; (4) the defendant consents to diversion and waives his or her right to a speedy trial; (5) the defendant agrees to comply with the prescribed treatment; and (6) the defendant will not pose an unreasonable risk of danger to public safety if treated in the community. (§ 1001.36, subd. (b)(1)(A)–(F).)

"The maximum period of diversion is two years. ([§ 1001.36], subd. (c)(3).) If the defendant is subsequently charged with an additional crime, or otherwise performs unsatisfactorily in the assigned program, then the court may reinstate criminal proceedings. (*Id*., subd. (d).) 'If the defendant has performed satisfactorily in diversion, at the end of the period of diversion, the court shall dismiss the defendant's criminal charges that were the subject of the criminal proceedings at the time of the initial

14.

diversion' and 'the arrest upon which the diversion was based shall be deemed never to have occurred.' (*Id.*, subd. (e).)" (*Frahs*, *supra*, 9 Cal.5th at p. 627.)

To obtain relief on appeal, a defendant need only make a prima facie showing of the first eligibility requirement, i.e., the record must indicate he or she suffers from a qualifying mental disorder. (*Frahs*, *supra*, 9 Cal.5th at p. 640.) If the record affirmatively discloses such information, it is appropriate to conditionally reverse the judgment and order a "limited remand for the trial court to conduct a mental health diversion eligibility hearing ...." (*Ibid.*)

As noted, Craine had recently been classified as an MDO and was being monitored for suicidal behavior at the time of his offense. The conditions imposed under the MDO statutes apply to individuals who have "a severe mental health disorder that is not in remission or that cannot be kept in remission without treatment." (§ 2962, subd. (a)(1).) "Before a prisoner may be classified as an MDO under section 2962, both the person in charge of treating the prisoner and a practicing psychiatrist or psychologist from the State Department of Mental Health must evaluate the prisoner, and a chief psychiatrist of the Department of Corrections must then certify to the Board of Prison Terms that the prisoner meets the statutory criteria ...." (*People v. Fernandez* (1999) 70 Cal.App.4th 117, 125.) Although the exact nature of Craine's condition is unclear from the record, his MDO classification is prima facie evidence of a qualifying mental disorder for purposes of section 1001.36, subdivision (b)(1)(A). Therefore, a conditional reversal and remand is warranted.

On remand, it will be Craine's burden to establish eligibility under all applicable provisions of section 1001.36. If the trial court finds the prerequisites are met, it may grant relief as authorized by the statute. If the trial court finds Craine ineligible and/or unsuitable for diversion, his conditionally reversed convictions and sentence shall be reinstated. (*Frahs*, *supra*, 9 Cal.5th at pp. 640–641.)

## V. Prior Prison Term Enhancements

Our earlier decision in this case was issued on May 23, 2019.  In the interest of fairness, we note, sua sponte, that on October 8, 2019, Senate Bill No. 136 (2019-2020 Reg. Sess.) was signed into law.  (Stats. 2019, ch. 590, § 1, pp. 1–4.)  As a result, effective January 1, 2020, the one-year enhancement provided for in section 667.5, subdivision (b) is inapplicable to all prior prison terms except those served for a sexually violent offense within the meaning of Welfare and Institutions Code section 6600, subdivision (b).  Although neither side raised the issue on appeal, the parties and/or the trial court may address it in the proceedings on remand.

## DISPOSITION

The judgment is conditionally reversed and the matter is remanded for further proceedings.  On remand, the trial court shall conduct a mental health diversion eligibility hearing pursuant to section 1001.36 and *Frahs*, *supra*, 9 Cal.5th 618.

If the trial court finds appellant meets the eligibility requirements of section 1001.36, the court may grant relief as provided in the statute.  In the event appellant is found eligible and successfully completes a diversion program, the court shall dismiss the charges.  However, if the court finds appellant does not meet the requirements of section 1001.36, or if he does not successfully complete the diversion program, then his convictions and sentence shall be reinstated.  We express no views

16.

about whether appellant will be able to show eligibility on remand or whether the trial court should exercise its discretion to grant diversion if it finds him eligible.


                                                                    MEEHAN, J.

WE CONCUR:


LEVY, Acting P.J.


PEÑA, J.