Filed 11/13/14  P. v. Wilder CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| THE PEOPLE, | C075606 |
| Plaintiff and Respondent, | (Super. Ct. No. 62114530) |
| v. | |
| DENISE MARIE WILDER, | |
| Defendant and Appellant. | |

Defendant Denise Marie Wilder entered a negotiated plea of no contest to two counts of child endangerment (Pen. Code, § 273a, subd. (a);[1] counts one and two) and admitted, in connection with count one, that she personally inflicted great bodily injury resulting in death (§§ 12022.7, subd. (d), 12022.95), in exchange for a sentencing lid of

---

[1]  Further undesignated statutory references are to the Penal Code.

1

10 years four months in state prison. The court denied defendant's request for probation and sentenced her to the lid.

Defendant appeals. Her sole contention is that the trial court abused its discretion in denying probation. We disagree and shall affirm the judgment, as modified to correct an error in conduct credit computation.

## FACTUAL AND PROCEDURAL BACKGROUND

*Factual Basis for the Pleas*

Defendant took her two daughters, five-year-old K.W. and two-year-old M.W., to her parents' home while her parents were away on vacation. While there (from Sunday, April 1, 2012, until Wednesday, April 4, 2012), defendant drank alcohol and became intoxicated and unable to care for her children. The girls had only limited food and they drank alcohol. Friends and family were unable to contact defendant for days. When located the evening of April 4, 2012, defendant's blood-alcohol content was 0.23 percent. M.W. was dead from acute alcohol toxicity with a 0.21 vitreous alcohol level. K.W. was sick and had vomited several times.

*Probation Report*

The probation report described the events of early April in tragic detail. Defendant was awake, wearing only socks and underwear, and "extremely intoxicated" when located by a friend at her parents' house. The children were found in bed together; K.W. was lying next to her little sister's dead body and was "freaking out." She was naked except for a shirt, crying while explaining that she had wet the bed and defendant "took her clothes off because they were wet." Defendant was unemotional and, although standing and watching, showed no signs of being distraught as the responders attempted to revive her dead child.

There were "four large bottles of distilled spirits," open and empty, on the kitchen counter. K.W. told the responders that "her mommy was making [the girls] sleep all day" and that "her mommy kept telling her to 'shut up, and be quiet and go back to sleep.' "

2

She added defendant had given her "bad tasting water" that made her throw up. At several points during K.W.'s ordeal, defendant had been asleep and K.W. had been unable to wake her; K.W. also tried (and failed) to wake up her little sister, who was "so cold."

Defendant was interviewed later that same day. She told the police that she and her daughters had "hung out" from their arrival at her parents' house until the day the police came, and had "watched television, ate, played, read books." She then acknowledged "with little emotion" that she had "lost [her] daughter." She did not acknowledge that she had been drinking except that she admitted she had drank rum the night before she was found (Tuesday night), adding that all but one of the empty alcohol bottles in the house had been left there by her parents. When specifically asked when she last drank alcohol, she admitted she had "two drinks" on Sunday evening when she and the girls first arrived at her parents' house. She continued to deny drinking at all on Monday, and would not tell the police when she had last fed her daughters. K.W. told of eating nothing but dry cereal for three days. M.W.'s autopsy determined she had suffered from acute malnutrition as well as acute ethanol toxicity at the time of her death.

A year before her daughter's death, defendant had been assessed "for drug or alcohol dependency issues relating to her divorce and child custody dispute." The assessor found that "mother's lifestyle includes social activities involving excessive alcohol consumption" and recommended that defendant "not consume alcohol 24 hours prior to and during parenting time."

The report noted that defendant was presumptively ineligible for probation and found no unusual circumstances, noting that although defendant had no prior record, she was neither youthful nor aged. It added that the nature of defendant's crimes was more serious than typical child endangerment--as defendant's actions here resulted in the death of her child--and pointed out the extreme vulnerability of the victims due to their young age. The report also noted the infliction of both physical and emotional injury to both

3

children, the degree of monetary loss (given the loss of a young life), defendant's position of trust, and that defendant was an active participant in the crimes, "culpable for her own actions." Among the factors reported that related to defendant were that she had no prior criminal record, was willing to comply with terms of probation--although her ability to comply was questionable due to her "history of alcohol consumption"--and was remorseful.

Circumstances listed in aggravation under California Rules of Court, rule 4.421[2] included that defendant had inflicted great bodily injury resulting in death, that the victims were vulnerable, and that defendant took advantage of a position of trust. The sole circumstance in mitigation found by the probation officer was defendant's lack of a prior record. The report recommended the sentencing lid of 10 years four months.

In a supplemental report, the probation officer noted that less than two months before the current offenses, defendant was arrested for driving under the influence. She had been involved in a collision. When interviewed, she told an officer that she had consumed a fifth of vodka throughout the day. Her blood-alcohol content was 0.07 percent.

*Sentencing*

Defendant filed a sentencing brief which referenced an evaluation of defendant by a doctor, Eugene Roeder. Dr. Roeder opined that "the combination of [defendant's] propensity for alcohol abuse, her heightened sensitivity to alcohol because of her gastric bypass surgery and her combining alcohol with Paxil resulted in a situation in which [defendant] literally did not know what she was doing, she drank to the point of intoxication and blackout and remained at this level for several days, and as a result her neglect of her parental responsibilities resulted in her daughter's death." The brief argued

---

[2] Further undesignated rule references are to the California Rules of Court.

for a probationary sentence, arguing that "[t]he only explanation for the events that [led] to [M.W.'s] death is that [defendant], after months of constant family law battles and the resulting mental and emotional trauma, finally had something amounting to a psychotic break when she cleaned out her ex-husband's belongings." The brief discussed the criteria in rule 4.414, comparing the facts in the instant case with those in other cases, defendant's lack of a prior criminal record, her acknowledgement of her drinking problem, her positive prognosis for staying sober according to Dr. Roeder, defendant's remorse, and that the "people who know [defendant] best describe her as a kind and loving mother, one who would never do anything to harm her children." Defense counsel submitted numerous documents associated with the family law case (including the report of a mediator who expressed concerns about defendant's risk for alcohol consumption while parenting).

The People requested the sentencing lid, arguing the case was an aggravated child abuse case given defendant's intoxication and failure to provide care for her two children for three days, resulting in her children's use of defendant's alcohol and causing M.W.'s death and K.W.'s illness.

At the sentencing hearing, the trial court began by indicating that defendant's case "could be an aggravated case that could require more time in state prison than what was agreed upon." It commented on many of the facts of the case from the probation report detailed *ante*, as well as the mediator's report, concluding that defendant "was placed on notice" as she had been "ordered by the court not to use alcohol in the presence of the children," as well as "warned about the risks and dangers of using alcohol in front of the children." It found that defendant had disregarded her children's safety to the point of meeting "almost every element of implied malice." Ultimately, the court agreed to go forward with sentencing pursuant to the plea agreement, indicating that it had received and read the probation report.

5

After hearing from all witnesses and the parties, the trial court observed that the children "were forced to drink a poison because [defendant] was unable to give them any kind of nourishment or water," adding, "And I don't consider for a moment an excuse or an accident that [defendant] was intoxicated. She had been warned . . . repeatedly about the effects of alcohol on these children. And she chose to disregard that."

The court also rejected defendant's claim that she had blacked out at her parents' house, indicating that defendant had "lied to the investigators" and noting that she had recalled and recounted some details of what had happened when first interviewed by the police, and even had claimed the empty alcohol bottles were left on the counter by her parents. The court emphasized that it did "not believe" defendant's claim of memory loss. Without making explicit findings as to probation eligibility and aggravating or mitigating factors, the court denied probation, announcing the case was "absolutely aggravated" and that it "would not grant probation given the facts and allegations and the evidence that I have gone over here today." It then imposed the sentencing lid of 10 years four months--the midterm of four years for count one plus five years for the enhancement and a consecutive one-third the midterm (16 months) on count two.

## DISCUSSION

Defendant contends the trial court abused its discretion when it "refused to find unusual circumstances" and, accordingly, denied her request for probation. We disagree.

In entering her plea, defendant admitted a great bodily injury enhancement which rendered her ineligible for probation unless the court determined that her case was an "unusual" one where the "interests of justice" would be served by a grant of probation. (§ 1203, subd. (e)(3).) In determining whether a case is an unusual one, the court considers *but is not bound* by the mitigating factors in rule 4.413(c).

Rule 4.413 provides, in pertinent part, that:

"(b) If the defendant comes under a statutory provision prohibiting probation 'except in unusual cases where the interests of justice would best be served,' or a

6

substantially equivalent provision, the court should apply the criteria in (c) to evaluate whether the statutory limitation on probation is overcome; and if it is, the court should then apply the criteria in rule 4.414 to decide whether to grant probation.

"(c)  The following facts *may* indicate the existence of an unusual case in which probation may be granted if otherwise appropriate:

"(1)  A fact or circumstance indicating that the basis for the statutory limitation on probation, although technically present, is not fully applicable to the case, including:

"(A)  The fact or circumstance giving rise to the limitation on probation is, in this case, substantially less serious than the circumstances typically present in other cases involving the same probation limitation, and the defendant has no recent record of committing similar crimes or crimes of violence; and

[¶] . . . [¶]

"(2)  A fact or circumstance not amounting to a defense, but reducing the defendant's culpability for the offense, including:

"(A)  The defendant participated in the crime under circumstances of great provocation, coercion, or duress not amounting to a defense, and the defendant has no recent record of committing crimes of violence;

"(B)  The crime was committed because of a mental condition not amounting to a defense, and there is a high likelihood that the defendant would respond favorably to mental health care and treatment that would be required as a condition of probation; and

"(C)  The defendant is youthful or aged, and has no significant record of prior criminal offenses."  (Emphasis added.)

The language "unusual case" and "interests of justice" as used in section 1203, subdivision (e) is narrowly construed and, applying the factors in rule 4.413, limits a grant of probation to a case where the crime is either atypical or the defendant's moral blameworthiness is reduced.  (*People v. Stuart* (2007) 156 Cal.App.4th 165, 177-178; *People v. Superior Court (Dorsey)* (1996) 50 Cal.App.4th 1216, 1229.)  *If* the court

7

determines that the case is an unusual one, the court *then* decides whether to grant probation based on the criteria in rule 4.414. (*People v. Superior Court (Du)* (1992) 5 Cal.App.4th 822, 830.) The trial court's determination whether the case is an unusual one, like the court's determination whether to grant probation, is reviewed for an abuse of discretion. (*Id*. at p. 831.)

Defendant argues that her offense was not "more egregious than other child abuse or neglect cases where great bodily injury is proven or cases which involve a probation limitation," but that is not the test. We have described the relevant considerations *ante*; they include whether the circumstances surrounding defendant's criminal conduct were "*substantially less serious* than the circumstances typically present in other cases involving the same probation limitation." (Rule 4.413(c)(1)(A), emphasis added.) Defendant does not (and cannot) even attempt to argue in her briefing that her crimes against her children were substantially less serious than other child abuse cases concerning great bodily injury or otherwise involving a probation limitation. The trial court found that the case was "absolutely aggravated" which reflected its finding that defendant's crimes were *not* substantially less serious than other similar cases. That assessment was supported by the record.

Defendant also argues the "totality of the circumstances" and her "out of character" behavior warranted probation, in an apparent attempt to argue her case presented unusual circumstances, but we have set forth the favored criteria for consideration *ante*, and these are not among them. If defendant means to argue reduced culpability pursuant to rule 4.413(c)(2)(A) through (C), she would need to show "provocation, coercion, or duress" or a "mental condition" and a "high likelihood that [she] would respond favorably to . . . treatment . . . " or that she was "youthful or aged" and had no prior record.

The record reflects that the trial court rejected defendant's argument that she was under duress or had any other mental condition at the time of her crime, noting instead

that she had "lied" and the court did "not believe" her. Given that the record showed defendant had been warned about her tendency to drink to excess and told to refrain from drinking alcohol while parenting her children, the trial court could reasonably come to this conclusion and reject defendant's argument that her culpability was somehow significantly reduced by the combination of factors which she now argues again on appeal. We see no abuse of discretion.

Defendant also makes a number of arguments for probation based on rule 4.414. Because the trial court did not err when it found defendant's case was not unusual and did not merit consideration for probation, we need not address these arguments. Similarly, although defendant fleetingly claims her due process rights were violated, she does not separately head and argue the due process issue and we decline to consider it. (Rules 8.360(a), 8.204(a)(1)(B); *People v. Roscoe* (2008) 169 Cal.App.4th 829, 840.)

We have located an error not noted by either party which needs correction. The trial court awarded 545 actual days and 544 conduct days pursuant to section 4019 for a total of 1,089 days of presentence custody credits. Defendant's conduct credits, however, were limited to 15 percent pursuant to section 2933.1 because she was charged with and admitted a great bodily injury enhancement. (§§ 667.5, subd. (c)(8), 12022.7.) Thus, defendant was entitled to 81 days of conduct credits pursuant to section 2933.1 for a total of 626 days of presentence custody credits. We will order the judgment modified accordingly.[3]

---

[3] In the interest of judicial economy, we have resolved this error without first requesting supplemental briefing. Any party claiming to be aggrieved may petition for rehearing. (Gov. Code, § 68081.)

9

**DISPOSITION**

The judgment is modified, reducing conduct credits to 81 days pursuant to section 2933.1 for a total of 626 days of presentence custody credits. The trial court is directed to prepare an amended abstract of judgment and to forward a certified copy to the Department of Corrections and Rehabilitation. As modified, the judgment is affirmed.

                                          DUARTE          , J.

We concur:

NICHOLSON     , Acting P. J.

HOCH          , J.