Filed 3/26/15  P. v. Kuks CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| THE PEOPLE, | C073960 |
| Plaintiff and Respondent, | (Super. Ct. No. 12F7881) |
| v. | |
| TRAVIS PATRICK KUKS, | |
| Defendant and Appellant. | |

Defendant Travis Patrick Kuks pleaded no contest to assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1))[1] and admitted he personally inflicted great bodily injury during the assault (§ 12022.7, subd. (a)).  Sentenced to five years in state prison, defendant appeals his sentence claiming the trial court abused its discretion in refusing to grant him probation.

We affirm.

---

[1]  Undesignated statutory references are to the Penal Code in effect at the time of the charged offenses.

1

## FACTUAL AND PROCEDURAL BACKGROUND

### Evidence from the Preliminary Hearing and Probation Report[2]

In October 2012, defendant, age 19, was dating A.Y., age 17. Approximately two weeks before A.Y.'s 18th birthday, defendant and A.Y. had sex. A.Y.'s father, Samuel Y., found out the two had sex and was so angry, he punched the window of his car, injuring his hand. Samuel called defendant, who was out of town, and threatened to " 'blow [defendant's] head off' " if defendant returned for A.Y.

When defendant returned to town, he met A.Y. and her mother at a local Starbucks. He told A.Y.'s mother that he wanted to marry A.Y. A.Y.'s mother told defendant he would need to settle things with her husband before that could happen, so defendant arranged a meeting with Samuel.

On October 31, 2012, defendant met Samuel at the Starbucks. Not long after they started talking, the conversation turned into a physical altercation. According to Samuel, defendant gave him a " 'poor apology' " and was acting like a " 'smart-mouthed kid.' " Samuel told defendant he was so upset about defendant having had intercourse with his daughter that he had punched his car window. Defendant told the probation officer that Samuel had said he would have "smashed every bone" in defendant's face had defendant been present when he found out about defendant's sexual relations with his daughter. Defendant replied that would not have happened, prompting both men to stand up. According to Samuel, defendant got close to Samuel's face, and Samuel then told defendant, " 'You wanna go?' " Samuel shoved defendant because he was so close. Defendant told the probation officer that Samuel used a palm-strike, hitting defendant in the shoulder that had recently undergone surgery after a car accident. Defendant said that

---

[2] At the time of the plea, the parties agreed that the police report and the preliminary hearing transcript provided a factual basis for the plea. The police report was summarized in the probation report.

arm was practically useless. However, witnesses said they saw defendant shove Samuel into a display rack with two hands. Witnesses said defendant shouted, " 'Why did you push me, man?' " Defendant pulled a knife from his waistband and slashed Samuel across the lower abdomen, slicing so hard Samuel's intestines were exposed. Defendant said he made this move without thinking. An employee got between the two. Samuel, holding his abdomen, said "I can't believe you just stabbed me." After retreating to the bathroom, defendant came out, began apologizing to Samuel and tried to assist others in rendering aid. Witnesses described defendant as unemotional during this time. Samuel was eventually taken to the hospital.

Most of the witnesses never saw a knife. Police recovered a Smith & Wesson folding knife from defendant. The knife had a four-inch blade. The unfolded length of the knife is ten inches. In explaining how he was able to use the knife so quickly, defendant told the probation officer that the knife was designed with a loose locking mechanism so that it could be opened with one hand.

In a recorded conversation of a phone call made from police custody by defendant to A.Y.'s mother, defendant told her that " '[i]t was a fluke thing,' " and it was " 'spur of the moment.' " Defendant further told her, Samuel grabbed him by the neck and reached for something, saying he would " 'blow [defendant's] head off.' "

**Charges and Negotiated Resolution**

Defendant was charged with attempted murder (§§ 664, 187) and assault with a deadly weapon (§ 245, subd. (a)(1)). The People further alleged defendant personally inflicted great bodily injury and used a deadly weapon during the commission of his crimes. (§§ 1203.075, 12022.7, subd. (a), 12022, subd. (b).)

Defendant pleaded no contest to assault with a deadly weapon and admitted he personally inflicted great bodily injury during the assault on Samuel. (§§ 245, subd. (a)(1), 12022.7, subd. (a).) In exchange for his plea, the parties agreed to a

3

sentencing range of probation to a maximum sentence of six years in state prison. The remaining charge and enhancement were dismissed.

## Defendant's Testimony at the Sentencing Hearing

Defendant testified that as of the date of the incident at Starbucks he and A.Y. were engaged. Defendant was Catholic and A.Y.'s parents were Pentecostal, and did not want defendant to be with their daughter if he was not also Pentecostal.

Defendant testified that A.Y. told her mother they had slept together and the family was in "an upheaval" arguing about the relationship. Samuel called defendant and threatened to blow defendant's head off.

Defendant said that as of approximately October 2012, he always carried the "Smith & Wesson border patrol knife" with him. The knife was given to him after he had been in a car accident where he injured his shoulder and was stuck inside the car. He carried the knife because he feared he would not be able to escape if he were in another car accident.[3] The knife was a folding knife, and had a "window breaker" and a "seat belt cutter." The blade was heavy and loose, so it could be flicked open with one hand.

Defendant said that when he went to the meeting with Samuel, he was still recovering from the shoulder injury he sustained in the car accident. He had no animosity toward Samuel or any intention of using the knife to injure him. Defendant said he wanted to say he was sorry for the problems his relationship with A.Y. was causing the family. He was hoping to talk out the situation and "mediate something."

The Starbucks was busy, but they found a table. Defendant testified that he started the conversation by apologizing for the problems he had caused. As the conversation evolved, Samuel got upset, pushed the table back, stood up, and said, "You want to go right now?" Defendant felt "a little scared" at that point. He testified he did not want to

---

[3] A.Y. told the police she never knew defendant to carry a knife.

4

get hit sitting down, so he stood up. Instead of walking away, he just stood there for a second. He thought if he walked away, he would be punched in the back of the head. Defendant then said he did not think Samuel would hit him; he thought Samuel would stand there and then sit back down. Samuel hit defendant's injured shoulder using his open palm in a pushing motion. Defendant pulled the knife from where he carried it clipped to his belt, flicked it open and swung it at Samuel, feeling that was the only way he could protect himself because of his shoulder injury and recent surgery. As soon as he saw blood on Samuel's shirt, defendant went to the bathroom and called his mother. Defendant later came out waited with Samuel for the police and ambulance to arrive. When asked how he was feeling toward Samuel at that point in time, defendant initially said, "I was just -- you know, I was kind of like, you know, well, you know, that's -- it was really just kind of -- my whole relationship with [A.Y.], like everything -- it was just everything kind of went out the window." When asked a second time how he was feeling about Samuel, defendant testified that he was worried and scared that Samuel would not make it.

Defendant testified that if he had the opportunity to speak with Samuel, he would apologize for the problems that he had caused to Samuel's family, "for all of the stress . . . all of . . . the time in the hospital and the pain, physical [and] emotional pain . . . ."

### Statement by the Victim

Samuel told the court that the defendant never apologized and that when defendant got in his face -- a distance of four to five inches -- Samuel pushed defendant away. Samuel said he pushed defendant in the chest, not the shoulder. He described how defendant used the knife, saying defendant stepped forward and slashed his stomach "in one motion, as if he had practiced or trained to do so beforehand. It was done very quickly and intentionally, with extreme amount of force." The knife cut through Samuel's coat, undershirt, skin, stomach muscles, fat layer, and exposed his organs. Samuel said he was unarmed and never advanced toward defendant.

5

**Sentencing**

Defendant acknowledged he was presumptively ineligible for probation, but argued these were unusual circumstances, warranting a grant of probation. Defendant noted he was young and had no criminal record. Defendant also argued he "participated under circumstances of great provocation not amounting to a defense" and did not have a history of committing violent crimes. In addition, defendant argued he had significant family and community support, which would allow him to comply with the terms of probation, and he was remorseful.

The prosecutor acknowledged that it is possible this incident represents "a single act of abhorrent behavior" committed by a person with no prior record, and who believed he was provoked. He also acknowledged that it is possible such a situation would not happen again, but argued that the violent and "extremely vicious" nature of the offense warranted a state prison sentence.

The trial court noted defendant had no prior criminal record and acknowledged that was in his favor. The court then found defendant did not act "under circumstances of great provocation, coercion or duress not amounting to a defense." The court noted that based on the probation report, witnesses observed what appeared to be a very serious conversation lasting three to five minutes. Defendant then shoved Samuel into a display rack and shouted at him, " 'Why did you push me, man?' " After defendant pushed Samuel into the display rack, defendant continued to walk towards him. Defendant had a blank stare, appeared to be in a daze or shock as the incident was occurring. Witnesses described defendant as appearing to be the aggressor.

The court then summarized defendant's actions speaking from defendant's perspective: "I had made a plan, I decided to get a meeting with an individual who was standing in the way of that plan, knowing that it was going to be or any reasonable person certainly would have understood it to have been something where there was going to be a great deal of tension." The trial court went on to say: "And I don't get from his

6

testimony, through his demeanor while testifying, through his answers while testifying, that he has any different state of mind than he had walking into the Starbucks. He doesn't outwardly -- other than saying I felt bad for him at the time, I didn't know what was going to happen to him, I don't get from him any feeling of remorse, any feeling that he is in fact wrong in this particular situation.

"And I do think that the use of the knife was directed, that is I can't -- unless he had in his mind going in that that knife was going to be used somehow under the right circumstances, that he could have in such a short amount of time retrieved it, opened its blade, stabbed with the type of force necessary to cause this particular injury, and then concealed the knife so no other patron within the restaurant was able to see, and after that grave injury was able to keep that knife concealed."

The court then ruled, "I don't think that the Rule of Court's requirement that great provocation or coercion or duress not amounting to self-defense, that presumption being overcome or essentially that being shown in order to overcome the presumption of non-eligibility for probation. And so I do think that the appropriate sentence is the one that is indicated by the probation officer, noting this was a six-year . . . lid, which would have been the midterm. I do think that the defendant's youth, his lack of prior criminal history and the prospects upon his release mitigate the situation to a point where the Court can and will impose the low term as recommended." The trial court then sentenced defendant to five years in state prison.

## DISCUSSION

Defendant concedes he was presumptively ineligible for probation because he used a deadly weapon during the commission of his crime. (§ 1203, subd. (e)(2) ["Except in unusual cases where the interests of justice would best be served if the person is granted probation, probation shall not be granted to . . . . [¶] . . . [¶] (3) Any person who used . . . a deadly weapon upon a human being in connection with the perpetration of the crime of which he or she has been convicted."].) However, applying California Rules

7

of Court, rule 4.413(c)(1)(A), 4.413(c)(2)(A), and (C),[4] defendant contends the presumption has been overcome.  We disagree.

Rule 4.413(b) provides that if the defendant comes under a statutory provision prohibiting probation except in unusual cases where the interests of justice would best be served, the court should apply the criteria in rule 4.413(c) to evaluate whether the statutory limitation on probation is overcome.  Rule 4.413(c) provides that "[t]he following facts may indicate the existence of an unusual case in which probation may be granted if otherwise appropriate:

"(1) *Facts relating to basis for limitation on probation*

"A fact or circumstance indicating that the basis for the statutory limitation on probation, although technically present, is not fully applicable to the case, including:  [¶] (A) The fact or circumstance giving rise to the limitation on probation is, in this case, substantially less serious than the circumstances typically present in other cases involving the same probation limitation, and the defendant has no recent record of committing similar crimes or crimes of violence; and  [¶]  (B) The current offense is less serious than a prior felony conviction that is the cause of the limitation on probation, and the defendant has been free from incarceration and serious violation of the law for a substantial time before the current offense.

"(2) *Facts limiting defendant's culpability*

"A fact or circumstance not amounting to a defense, but reducing the defendant's culpability for the offense, including:  [¶]  (A) The defendant participated in the crime under circumstances of great provocation, coercion, or duress not amounting to a defense, and the defendant has no recent record of committing crimes of violence;  [¶]  (B) The crime was committed because of a mental condition not amounting to a defense, and

---

[4] Undesignated rule references are to the California Rules of Court.

8

there is a high likelihood that the defendant would respond favorably to mental health care and treatment that would be required as a condition of probation; and  [¶]  (C) The defendant is youthful or aged, and has no significant record of prior criminal offenses."

Under rule 4.413, the existence of any of the listed facts does not necessarily establish an unusual case.  Instead, those facts merely " '*may* indicate the existence of an unusual case.'  [Citation.]"  (*People v. Stuart* (2007) 156 Cal.App.4th 165, 178 (*Stuart*).)  The rule language is permissive, not mandatory; thus, the trial court is not required to find the case unusual even when facts establish relevant criteria under the rule.  (*Ibid*.)

We review a trial court's determination that a case may or may not be unusual for an abuse of discretion.  (*Stuart*, *supra*, 156 Cal.App.4th at p. 178.)  "The trial judge's discretion in determining whether to grant probation is broad.  [Citation.]"  (*Id*. at pp. 178-179.)  A trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it, and the burden is on the defendant to clearly show that the sentencing decision was irrational or arbitrary.  (*Id*. at p. 179.)  Further, "if the statutory limitations on probation are to have any substantial scope and effect, 'unusual cases' and 'interests of justice' must be narrowly construed . . . ."  (*People v. Superior Court (Dorsey)* (1996) 50 Cal.App.4th 1216, 1229.)

**A.  Comparison of Defendant's Use of a Deadly Weapon to the Typical Case**

For the first time, defendant contends on appeal that the presumption is overcome by rule 4.413(c)(1)(A):  "The fact or circumstance giving rise to the limitation on probation is, in this case, substantially less serious than the circumstances *typically present* in other cases involving the same probation limitation, and the defendant has no recent record of committing similar crimes or crimes of violence."  (Italics added.)  This fact applies, according to defendant, because:  (1) defendant did not carry the knife for a weapon, but rather he carried it for "utilitarian value" and "safety reasons"; (2) the injury inflicted was not a stab wound, but rather a single swipe; and (3) because defendant

9

apologized to Samuel at the scene, tried to help others who were rendering aid, identified himself to the police when they arrived, and told them the knife was in his pocket.

Assuming this argument is not forfeited because of defendant's failure to raise it in the trial court, we conclude it is meritless. The fact giving rise to the probation limitation is the use of a "deadly weapon" in the commission of the offense for which defendant was convicted. (§ 1203, subd. (e)(2).) In comparing defendant's use of the deadly weapon to the *typical case*, we look to the nature of the deadly weapon, the manner in which it was used and the extent of the injuries defendant inflicted.

Regarding the nature of the deadly weapon, we note this is not a situation where the implement found to be a deadly weapon was normally not considered to be a weapon, e.g., a piece of pipe, an ashtray, a pencil. The use of such items might be considered less serious that the use of a deadly weapon in a typical case. Here, the deadly weapon was a particularly dangerous knife. Indeed, based on defendant's description of the knife and the description in the preliminary hearing and probation report, the knife may very well have been illegal. The knife had a four-inch folding blade, which defendant testified was heavy and loose, and could be flicked open with one hand.[5]

We next look to how the deadly weapon was used and the injuries inflicted. We note that the crime of assault with a deadly weapon does not require that injury be inflicted. This case does not involve a mere attempt to strike or otherwise contact Samuel with a deadly weapon. Here defendant used a particularly dangerous knife in an extremely aggressive way to essentially eviscerate Samuel. These are not "circumstances typically present in other cases" involving the probation limitation related to use of a

---

[5] Section 21510 makes possession of a "switchblade knife" a misdemeanor. Section 17235 defines a "switchblade knife" as "a knife having the appearance of a pocketknife and includes a . . . gravity knife, or any other similar type knife, the blade . . . of which [is] two or more inches in length and which can be released automatically by a . . . flip of the wrist . . . or is released by the weight of the blade . . . ."

deadly weapon. Defendant has not overcome the presumption by establishing his use of a deadly weapon was less serious than the *typical* assault with a deadly weapon.

### B. Age and Provocation

The parties argued and the trial court applied the rule 4.413(c)(2)(A) and (C) criteria. The trial court concluded defendant was youthful and had no history of criminal offenses, but that defendant failed to prove there was "great provocation or coercion or duress not amounting to self-defense." The court noted that defendant went to the meeting with Samuel knowing Samuel was angry and there would be tension. The court found the manner and speed with which defendant used the knife and the significant injury inflicted were evidence he intended to use the knife "under the right circumstances." The court found defendant made "a very specifically directed thrust with the knife in a way that caused significant damage." And, based on defendant's testimony and demeanor during the sentencing hearing, the court found defendant had no remorse for the significant injury he inflicted on Samuel. Without seeing defendant testify, as did the trial court, we note that defendant's first response to the question about how he was feeling about Samuel immediately after the assault related not to Samuel's well-being, but rather how his relationship with Samuel's daughter and "just everything kind of went out the window." This testimony is supportive of the trial court's finding that defendant lacked genuine remorse.

Thus, despite defendant's youth and despite having no prior criminal record, the trial court reached the conclusion these circumstances were not unusual given the other circumstances in the case. This determination is supported by the evidence. The trial court's decision was within the bounds of reason and was not an abuse of discretion.

11

## C. Application of Rule 4.414

Defendant contends on appeal that not only was the presumption overcome, but that the mitigating circumstances in rule 4.414[6] and the ends of justice warranted a grant of probation. In addition to rule 4.413's unusual circumstances and interest of justice analysis, trial courts often will apply rule 4.414 to find the defendant unsuitable so the record is clear how the court would have ruled if the presumption of ineligibility had been overcome. Here, the trial court did not take this extra step, and simply determined that defendant did not overcome the presumption of ineligibility. Because we conclude

---

[6] Rule 4.414 provides: "Criteria affecting the decision to grant or deny probation include facts relating to the crime and facts relating to the defendant.

"**(a) Facts relating to the crime** [¶] Facts relating to the crime include: [¶] (1) The nature, seriousness, and circumstances of the crime as compared to other instances of the same crime; [¶] (2) Whether the defendant was armed with or used a weapon; [¶] (3) The vulnerability of the victim; [¶] (4) Whether the defendant inflicted physical or emotional injury; [¶] (5) The degree of monetary loss to the victim; [¶] (6) Whether the defendant was an active or a passive participant; [¶] (7) Whether the crime was committed because of an unusual circumstance, such as great provocation, which is unlikely to recur; [¶] (8) Whether the manner in which the crime was carried out demonstrated criminal sophistication or professionalism on the part of the defendant; and [¶] (9) Whether the defendant took advantage of a position of trust or confidence to commit the crime. [¶]

"**(b) Facts relating to the defendant** [¶] Facts relating to the defendant include: [¶] (1) Prior record of criminal conduct, whether as an adult or a juvenile, including the recency and frequency of prior crimes; and whether the prior record indicates a pattern of regular or increasingly serious criminal conduct; [¶] (2) Prior performance on probation or parole and present probation or parole status; [¶] (3) Willingness to comply with the terms of probation; [¶] (4) Ability to comply with reasonable terms of probation as indicated by the defendant's age, education, health, mental faculties, history of alcohol or other substance abuse, family background and ties, employment and military service history, and other relevant factors; [¶] (5) The likely effect of imprisonment on the defendant and his or her dependents; [¶] (6) The adverse collateral consequences on the defendant's life resulting from the felony conviction; [¶] (7) Whether the defendant is remorseful; and [¶] (8) The likelihood that if not imprisoned the defendant will be a danger to others."

the trial court did not abuse its discretion in that regard, we need not address defendant's argument about his purported suitability for probation under rule 4.414.

### D. Defendant's Criticism of the Decisional Law on
### Overcoming the Presumption of Probation Ineligibility

Defendant argues that "case authorities generally interpret the code and rules of court in an insupportable narrow manner." He asks this court to ignore the weight of precedent and interpret rule 4.413 broadly. As noted by defendant, courts have been interpreting this rule narrowly for decades. As also noted by defendant, the California Supreme Court has not stepped in to correct those decisions. We are not persuaded by defendant's argument and find no reason to question the well-established interpretation of the rule.

### DISPOSITION

The judgment is affirmed.

      MURRAY      , J.

We concur:

      RAYE      , P. J.

      DUARTE      , J.