Filed 5/26/21  P. v. Gadsky CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H048485 |
| Plaintiff and Respondent, | (Monterey County Super. Ct. No. 19CR008763) |
| v. | |
| DAVID ROBERT GADSKY, | |
| Defendant and Appellant. | |

Defendant David Robert Gadsky appeals after pleading no contest to infliction of corporal injury on a spouse or cohabitant with a prior domestic violence conviction (Pen. Code, § 273.5, subd. (f)(1))[1] and misdemeanor preventing or dissuading a witness from reporting a crime (§ 136.1, subd. (b)(1)).  Defendant was sentenced to the low term of two years in state prison.

On appeal, defendant contends the trial court abused its discretion by denying probation.  For the reasons explained below, we will affirm the judgment.

## I.    BACKGROUND

### A.    *Facts of the Charged Offenses*[2]

Defendant's current convictions stemmed from an incident on August 3, 2019.  According to Jane Doe, his girlfriend at the time, defendant had "attacked" her in their bedroom.

_____

[1] Unspecified section references are to the Penal Code.

[2] The facts are taken from the transcript of the preliminary hearing.

Earlier that evening, defendant and Doe had been drinking alcohol. Defendant was "quite intoxicated." He was also "angry, belligerent." Doe went to the bedroom to avoid defendant.

Defendant opened the bedroom door and turned off the light. Doe did not respond, so defendant unplugged the television. Doe again did not respond, so defendant took the remote control. Defendant grabbed Doe by the hair and threw her on the ground. Defendant then got on top of Doe and held her down. Defendant held Doe by the hair and punched her in the ribs. He was "cussing" at her, calling her things like "[s]tupid bitch."

Doe managed to get defendant off her. She pushed defendant into the hallway and then shut the door. She tried to hold the door closed, but defendant was able to come back into the bedroom. Defendant put Doe on her back and got on top of her. Defendant held Doe by the throat and tried to "shove his tongue" into her mouth, but she bit him and pushed him off her.

When Doe told defendant she was going to call the police, defendant said he would tell the police she had pushed him into a fire pit. In fact, defendant had fallen into a fire pit earlier that evening and had suffered burns on his hands and arms. When police arrived, he claimed that Doe had thrown boiling water on him.

Doe declined medical treatment. However, as a result of the incident, Doe had a "punch mark" on one arm and a bruise on the other arm. She also had red marks on the back and sides of her neck.

## B. *Past Domestic Violence*

According to Doe, defendant had been violent about 30 previous times during their 10-year relationship. Defendant was always drunk when he was violent. The most recent prior incident was about two weeks before the August 3, 2019 incident. Doe had tried to intervene when defendant was trying to hit his nephew with a hatchet. Defendant grabbed Doe, hit her, and threw her down.

2

About a year earlier, defendant had given Doe a concussion. Defendant had been drunk and angry. He had grabbed her by the hair and punched her in the head about nine times.

## C. *Change of Plea*

Defendant pleaded no contest to infliction of corporal injury on a spouse or cohabitant with a prior domestic violence conviction (§ 273.5, subd. (f)(1)) and misdemeanor preventing or dissuading a witness from reporting a crime (§ 136.1, subd. (b)(1)). The plea agreement contemplated a maximum prison term of four years, with felony probation "open to the Court."

## D. *Probation Report*

In a statement to the probation officer, defendant acknowledged he was "addicted to alcohol" and claimed he was "trying to work on that." Defendant stated that he was attending counseling, attending Alcoholics Anonymous (AA) meetings, and wearing a SCRAM (secure continuous remote alcohol monitoring) device that would detect alcohol use.

Doe told the probation officer that defendant "had been abusing her physically and emotionally for approximately ten years." Doe was in therapy and had attempted suicide because of the way defendant treated her. Doe felt that if defendant was granted probation, it would be "a slap in her face" because of what he had "put her through." Doe believed that defendant was attending AA meetings and counseling "only to make himself look good in front of the Court."

Defendant's only prior criminal conviction was a 2013 felony violation of section 273.5, subdivision (a), for which he had been granted probation. The conviction was reduced to a misdemeanor in 2015 and then dismissed pursuant to section 1203.4 in 2018.

The probation officer recommended that the trial court deny probation and sentence defendant to state prison "for the term prescribed by law."

3

*E.*     *The People's Sentencing Brief*

The People's sentencing brief included the facts of defendant's 2013 domestic violence offense. Doe reported that defendant had strangled her and punched her. Defendant had also pulled down her pants, bitten her vagina, and called her "a whore and a prostitute." Doe's seven-year-old son had heard defendant call Doe "the 'B' word" and had heard defendant hurting Doe. Doe ended up in the hospital.

The People urged the trial court to deny probation. The People argued that the current domestic violence offense was serious, because not only did defendant attack and injure Doe, but he tried to "force his tongue in her mouth," which added "an element of sexual violence."

The People expressed doubt that defendant would be able to maintain sobriety and comply with probation, pointing out that he "expressed the same insight" at the time of his prior conviction. The People quoted from the 2013 probation report, which reflected that defendant had "admitted that he had drank too much alcohol" and that defendant claimed to have had "the insight that when he drinks, he drinks to excess and will not stop drinking."

*F.*     *Defendant's Sentencing Brief*

Defendant's sentencing brief acknowledged his alcoholism had been "a destructive force in his life." Defendant asserted he had "not consumed even one sip of alcohol" since his arrest and that he had been regularly attending AA meetings. He anticipated having a full year of sobriety at the time of sentencing, as verified by the SCRAM device. Defendant asserted that when sober, he "is not a danger to society." He asserted that his sobriety was "a justification for granting probation."

Defendant also asserted he had "attempted to take steps to address the underlying violence and anger that is unleashed when he drinks." He had voluntarily enrolled in counseling, which had ended due to the social worker's maternity leave and COVID-19

4

shutdowns. He had made efforts to reengage in therapy but had not been able to "obtain resources."

Defendant argued that the relevant factors weighed in favor of a grant of probation. (See Cal. Rules of Court, rule 4.414.[3]) Defendant asserted, inter alia, that the crime was not particularly serious, that it did not involve use of a weapon, that he had only one prior criminal conviction, that he had successfully completed probation previously, that his business would terminate if he went to prison, and that he would not be able to support his teenage daughter if he went to prison.

Documents attached to defendant's sentencing brief included a letter from an AA participant who described defendant's understanding of the effort required to maintain sobriety as well as the rewards of sobriety. Another letter, from defendant's mother, described defendant as "a good person who had a bad problem." Defendant also wrote a letter, in which he expressed guilt about how he had impacted Doe's life, how he found the AA meetings helpful, how he wanted to resume seeing a therapist, and how happy he was to be sober.

### G. *Sentencing Hearing*

Doe made a statement at the sentencing hearing. Doe described how defendant made her feel that she "could never do anything right" and that she was "garbage, broken, worthless." Doe reminded defendant that the incident he was being sentenced for was "just one of many." Doe told defendant that he always blamed her for his violence. Doe asserted that she still had "marks" from where defendant had punched her in the ribs, as well as "PTSD." Doe described having "flashbacks" that made it hard for her to sleep.

The prosecutor addressed defendant's recent efforts at treating his alcoholism, arguing that those efforts were "not enough." The prosecutor observed that defendant had recognized his substance abuse problem after his first conviction, but that "he didn't

---

[3] Further unspecified rule references are to the California Rules of Court.

5

change." The prosecutor argued that the trial court should not consider defendant's current conviction to be "a wake-up call" for him to seek treatment, and that the trial court should impose the four-year midterm.

Defendant's trial counsel acknowledged that defendant was not currently in counseling and that he had "failed to fix" his alcohol problem after his first conviction. Defendant's trial counsel asserted that defendant now had "different insight" about his drinking, in that he had realized it was not just "a problem of excess" but "a problem of overuse." Defendant's trial counsel noted that defendant had maintained sobriety and asserted that defendant would be a law-abiding, "upstanding member of society." Defendant's trial counsel urged the court to focus on defendant's likelihood of success "going forward" rather than on "what happened in the past." He requested that the trial court grant defendant probation.

The prosecutor responded by expressing "frustrat[ion]" that the impact of defendant's domestic violence on Doe was not being addressed. The prosecutor reminded the trial court that defendant "had a shot on probation" and "had a shot to recognize his alcohol use disorder and to address it."

The trial court indicated it had read and considered the probation report, the sentencing memoranda, Doe's statement, counsels' arguments, and defendant's "long-term sobriety." The trial court found that the current offenses did not stem from "an isolated incident" but were part of a pattern of "ongoing long-term abuse." The trial court noted that defendant had previously been "given a wake-up call" and had chosen to "ignore that." The trial court noted that "one has to be held accountable for their conduct."

The trial court found "that probation is not appropriate in this case" and imposed the low term of two years.

6

## II. DISCUSSION

Defendant contends the trial court abused its discretion by denying probation because no substantial evidence supports the trial court's finding that defendant had previously been "given a wake-up call" and had chosen to "ignore that."

### A. *Legal Standards*

" 'A denial or a grant of probation generally rests within the broad discretion of the trial court and will not be disturbed on appeal except on a showing that the court exercised its discretion in an arbitrary or capricious manner.' [Citation.] A court abuses its discretion 'whenever the court exceeds the bounds of reason, all of the circumstances being considered.' " (*People v. Downey* (2000) 82 Cal.App.4th 899, 909.) "A defendant who is denied probation bears a heavy burden to show the trial court has abused its discretion." (*People v. Mehserle* (2012) 206 Cal.App.4th 1125, 1157.)

" 'The circumstances utilized by the trial court to support its sentencing choice need only be established by a preponderance of the evidence. [Citations.]' [Citation.] Accordingly, in determining whether a trial court abused its discretion by denying probation, we consider, in part, whether there is sufficient, or substantial, evidence to support the court's finding that a particular factor was applicable." (*People v. Weaver* (2007) 149 Cal.App.4th 1301, 1313 (*Weaver*), disapproved on other grounds by *People v. Cook* (2015) 60 Cal.4th 922, 934-935, 939.)

### B. *Analysis*

Defendant characterizes the trial court's comments about the "wake-up call" as referring to his "prior performance on probation." Defendant contends that because he successfully completed probation in his prior case, the trial court was wrong to find that he had ignored a "wake-up call."

As an initial matter, we address the People's claim that this court should find forfeiture, "if [defendant] is claiming that the purported error resulted from a mistake or lack of awareness of the record." (See *People v. Scott* (1994) 9 Cal.4th 331, 353

7

[forfeiture doctrine applies when trial court's "stated reasons" for a sentencing decision "allegedly do not apply to the particular case"].)  In this case, the trial court gave no tentative ruling, and its findings and sentence followed counsel's arguments.  Thus, it is not clear that defendant had a "a 'meaningful opportunity to object.' "  (See *People v. Superior Court* (*Dorsey*) (1996) 50 Cal.App.4th 1216, 1223.)  Moreover, "the trial court was fully apprised" of defendant's position through his sentencing brief and his trial counsel's argument at the hearing.  (*Id*. at p. 1224.)  We decline to find forfeiture and proceed to consider the merits of defendant's claim.

After closely reviewing the trial court's comments at the sentencing hearing, we disagree with defendant's characterization of the record.  In finding that defendant had ignored a prior "wake-up call," the trial court was not finding that defendant's prior performance on probation was unsatisfactory.  Rather, the trial court was referring to the prosecutor's argument that defendant's prior conviction should have been "a wake-up call" regarding his alcohol abuse, which was a factor underlying the prior domestic violence conviction.  The trial court's comments focused on defendant's repeat criminality, noting that the current offenses did not stem from "an isolated incident" but were part of a pattern of "ongoing long-term abuse."  (See Rule 4.414(b)(1) [defendant's "[p]rior record of criminal conduct" is a fact affecting the decision to grant or deny probation].)  By referring to defendant's prior "wake-up call," the trial court was observing that, after his prior conviction, defendant failed to take steps to address his alcohol problem in order to prevent his future criminality.

Defendant acknowledges the trial court may have been referring to defendant's continued alcohol use since the prior offense, rather than his performance on probation.  However, he argues, this finding also was not supported by the evidence.  Defendant asserts he had not previously realized that he was an alcoholic and had not been given an opportunity to address his alcoholism.  Defendant acknowledges that in 2013, he had

8

expressed insight into the fact that he drank "to excess," but he claims that such insight is different from recognizing "an abuse problem."

Defendant attempts to draw too fine a distinction between alcohol addiction and regular excessive consumption of alcohol. According to Merriam-Webster, alcoholism is defined as "continued excessive or compulsive use of alcoholic drinks" and as "a chronic, a progressive, potentially fatal disorder marked by excessive and usually compulsive drinking of alcohol leading to psychological and physical dependence or addiction." (**https://perma.cc/34RE-DY6M** [as of May 25, 2021].) Thus, both excessive use of alcohol and compulsive use of alcohol are defining characteristics of alcoholism.

The trial court could reasonably find that when defendant recognized in 2013 that he tended to consume excessive amounts of alcohol and become violent as a result, he was aware of problems that he needed to address. Contrary to defendant's assertion, it is not "unfair" for defendant to have been expected to address his alcoholism or violence previously because an alcohol abuse program was apparently not one of the conditions of his prior probation. Defendant suffered a prior domestic violence conviction, and at the time of that conviction, he acknowledged that his violence was attributable to his excessive drinking. Yet, he continued to drink alcohol and commit violence upon Doe. The trial court could reasonably determine that defendant's continuing pattern of getting drunk and committing domestic violence on Doe, culminating in the current domestic violence conviction, was a factor that supported the denial of probation under rule 4.414(b)(1).

Because the trial court's challenged findings are supported by the record, we find no abuse of discretion in the denial of probation. (See *Weaver*, *supra*, 149 Cal.App.4th at p. 1313.)

### III.    DISPOSITION

The judgment is affirmed.

9

_____
                    Cogliati, J.*


    WE CONCUR:



_____
        Elia, Acting P.J.



_____
        Bamattre-Manoukian, J.




People v. Gadsky
H048485
_____
   * Judge of the Santa Cruz County Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.